OPINION
{¶ 1} Defendant, Andre Felder, appeals from his convictions for the offenses of aggravated robbery, R.C. 2911.01(A)(1), aggravated burglary, R.C. 2911.11(A)(2), a firearm specification attached to the aggravated robbery conviction, R.C. 2941.145, and the aggregate six year sentence of incarceration imposed on those convictions.
 {¶ 2} On December 5, 2003, James Quirk and Karen Gabrielle were in Gabrielle's room at the Parkway Inn Motel on Wagoner Ford Road, where Gabrielle resided. When a knock came on the door, Quirk answered it and two men barged inside. One of them was known to Quirk and Gabrielle as "Dray," whom they knew from having purchased crack cocaine from him.
 {¶ 3} Dray demanded that Gabrielle pay him for crack cocaine he had sold her. Dray brandished a gun, threatening Gabrielle if she failed to pay. Quirk offered to pay Gabrielle's debt from $1,100 in cash he had on his person. When Quirk pulled the money from his pocket, Dray walked over to him and, with the gun in his hand, said to Quirk that he would "take it all." After taking Quirk's money, Dray and the other man ran out the door.
 {¶ 4} Quirk telephoned to report the crime. When Montgomery County Sheriff's Deputies came to the scene, Quirk told them what had happened. He provided a physical description of Dray, a phone number, and the location of an apartment complex where Dray sometimes stayed. However, then and in the months that followed, deputies were unable to locate Dray.
 {¶ 5} On September 9, 2003, nine months after those events, Quirk telephoned Detective Richard Ward of the Montgomery County Sheriff's Department, and left a message saying that he had just seen Dray in a television news broadcast showing several men who had been arrested in Greene County on drug charges. Shortly after that, Quirk spoke with Detective Ward and said that he had identified "Dray" from the news broadcast as Defendant, Andre Felder, and even had a picture of him. Detective Ward contacted Greene County authorities, who reported that Defendant Felder had been arrested on drug charges.
 {¶ 6} On October 21, 2004, Felder was indicted in Montgomery County on charges of aggravated robbery, aggravated burglary, and theft, R.C. 2913.02(A)(4), all with firearm specifications. The State later dismissed the theft charge and its firearm specification. After a jury trial, Felder was found guilty and convicted of aggravated robbery and the attached specification, and aggravated burglary. The jury rejected a firearm specification attached to the aggravated burglary charge.
 {¶ 7} Felder was sentenced on his convictions pursuant to law. He filed a timely notice of appeal to this court. We will address the error assigned in an order that facilitates our review.
SECOND ASSIGNMENT OF ERROR
 {¶ 8} "APPELLANT WAS DENIED A FAIR TRIAL AND DUE PROCESS DUE TO PROSECUTORIAL MISCONDUCT."
 {¶ 9} The test for prosecutorial misconduct is whether the prosecutor's remarks were improper and, if so, whether they prejudicially affected substantial rights of the accused. Statev. Bey, 85 Ohio St.3d 487, 493, 1999-Ohio-283. The focus of that inquiry is on the fairness of the trial, not the culpability of the prosecutor. Id.
 {¶ 10} Generally, prosecutors are entitled to considerable latitude in opening and closing arguments. Maggio v. Cleveland
(1949), 151 Ohio St. 136; State v. Ballew, 76 Ohio St.3d 244,1996-Ohio-81. A prosecutor may freely comment in closing argument on what the evidence has shown and what reasonable inferences the prosecutor believes may be drawn therefrom. State v. Lott
(1990), 51 Ohio St.3d 160, 165. In determining whether the prosecutor's remarks were prejudicial, the State's argument must be viewed in its entirety. Ballew, supra.
 {¶ 11} During voir dire the prosecutor said to the prospective jurors:
 {¶ 12} "MR. SALYERS: That's right. That is a textbook answer.Fifth Amendment says you can shut up. You don't have to say a word. And not only can you sit and be quiet, but if you do, the rest of us can't hold it against you. Okay?
 {¶ 13} "I'm bringin' that up because Mr. Felder here is a Defendant in a criminal case. And that Fifth Amendment says he can sit there and be quiet as a mouse as the State put — gives you all this evidence and I can't get up in front of you and say, he didn't say anything in his defense, did he? He must be hiding something. I can't say that. And when you go back to deliberate . . .
 {¶ 14} "MR. ZUGELDER: Objection, Your Honor. Just for the record.
 {¶ 15} "JUDGE GERKEN: Well, I'll instruct the Jury.
 {¶ 16} "The Defendant has the absolute right to remain silent and if he does so, nothin' can be held against him. Your duties as a Juror would be when you go in to the — to deliberate, you say: `Well, we heard these witnesses, why didn't he take the Stand?' And then the other Jurors have to jump on that Juror and say: `Because the Judge told us we're not even allowed to consider that.'
 {¶ 17} "And that's the law. There are many reasons for it, mainly the Fifth Amendment to the United States Constitution. And there's no ifs, ands or buts about it, you're not allowed to let it enter your mind or to discuss it.
 {¶ 18} "MR. SALYERS: Thank you.
 {¶ 19} "That's exactly what I was gonna say. You go back there and you can't even wonder cause that's not allowed here. So my question is, can everybody do that? Can everybody up — respect that Fifth Amendment and not hold it against him if he doesn't testify? Okay." (T. 42-43, Emphasis supplied).
 {¶ 20} Defendant argues that the prosecutor's comments constituted a prohibited attempt to use Defendant's potential exercise of his constitutional right to remain silent against him. The State denies that, and claims that the comments when viewed in their entirety do not imply that Defendant's silence should be construed as evidence of his guilt. Rather, the comments emphasize that the jury cannot do that.
 {¶ 21} Unlike the cases cited in the State's brief, the prosecutor referred to the prohibited implication that when a defendant doesn't testify, it is because he is hiding something. The prosecutor then added "I can't say that." That last remark is disingenuous, and doesn't save the prosecutor's ploy from being improper. We strongly condemn this practice. Persistent misconduct of this kind will be referred by this court to the Ohio Supreme Court's office of disciplinary counsel. See: Statev. DePew (1988), 38 Ohio St.3d 275. However, in this instance, even though the prosecutor's remarks were improper, the instruction the trial court gave the jurors avoided the prejudice to Defendant's substantial rights necessary for reversal. Therefore, we reject the argument
 {¶ 22} Defendant next complains that during closing argument the prosecutor improperly made reference to Defendant's commission of the unrelated drug offenses in Greene County that ultimately led to Quirk's identification of Defendant Andre Felder as "Dray," the man who had robbed him. The prosecutor said:
 {¶ 23} "And this Defendant here is a drug dealer. Had been for some time. And it was only by virtue of his continued drug dealing that we even are here today, because if he had taken that eleven hundred dollars and left and never to commit another crime again, we'd never have found him." (T. 156).
 {¶ 24} Defendant failed to object to this remark by the prosecutor, and accordingly waived all but "plain error."Ballew, supra. Plain error does not exist unless it can be said that but for the error, the outcome of the trial clearly would have been different. State v. Moreland (1990),50 Ohio St.3d 58, 62.
 {¶ 25} The State argues that Defendant's involvement in drug offenses in Greene County was admissible to prove Defendant's identity as the perpetrator of these offenses. Evid.R. 404(B). We disagree. Identity was not a contested issue in this case. Quirk was very familiar with the perpetrator because he had purchased crack cocaine from him on several occasions, though he knew the man who robbed him only by his nickname, "Dray." The State did not rely on Defendant's Greene County offenses to prove disputed identity. Rather, the prosecutor commented on those matters in an effort to convince the jury that Defendant is a drug dealer. That asks the jury to make the prohibited inference that, because Defendant committed other drug related offenses, he probably committed these offenses because they involve money owed for drugs.
 {¶ 26} Nevertheless, no plain error has been demonstrated. When Quirk saw television news footage about drug arrests in Greene County, he realized that the man he saw being led away in handcuffs and who was identified in the story as Andre Felder was "Dray," the man who had robbed him. Quirk immediately relayed that information to Detective Ward. The trial court instructed the jurors on the very limited purpose for which they could consider evidence of other criminal offenses by Defendant, which is only to prove how Quirk had identified Defendant. The outcome of this trial would not clearly have been different absent this comment by the prosecutor. No plain error is demonstrated.
 {¶ 27} Next, Defendant complains that during closing argument the prosecutor mischaracterized the evidence when he commented that Defendant had threatened to shoot the two victims and, from that, the jury could conclude that the firearm in Defendant's possession was operable. While this record fails to demonstrate that Defendant verbally threatened to shoot either Quirk or Gabrielle, Quirk testified and demonstrated how with an outstretched arm how Defendant pointed the gun at him while saying to Quirk, "I'll take it all," referring to the money Quirk had pulled from his pocket. Brandishing the gun in that manner constitutes an implied threat to shoot that is sufficient to prove firearm operability. State v. Thompkins,78 Ohio St.3d 380, 1997-Ohio-52. The prosecutor's comments were proper for that purpose.
 {¶ 28} Finally, Defendant complains that during closing argument the prosecutor attempted to evoke sympathy for the victims by commenting that people whom society doesn't care about, such as drug addicts, are the most opportune people to rob. A review of the entire opening and closing arguments discloses that this comment was a response to Defendant's comments that people don't rob other people at gunpoint when they know them. The prosecutor's point was that although Defendant knew these victims, he robbed them anyway, believing he thought he could get away with it because it was unlikely that they would pursue prosecution, due to their circumstances and their own crimes and that, even if they did make a report, no one would believe them. The prosecutor's comments were not improper.
 {¶ 29} The second assignment of error is overruled.
FIRST ASSIGNMENT OF ERROR
 {¶ 30} "APPELLANT WAS DENIED EFFECTIVE ASSISTANCE OF COUNSEL, DUE PROCESS OF LAW, AND A FAIR TRIAL."
 {¶ 31} In order to demonstrate ineffective assistance of trial counsel a Defendant must demonstrate that counsel's performance was deficient and fell below an objective standard of reasonable representation, and that Defendant was prejudiced by counsel's performance; that is, there is a reasonable probability that but for counsel's unprofessional errors, the result of Defendant's trial or proceeding would have been different.Strickland v. Washington (1984), 466 U.S. 668, 104 S.Ct. 2052,80 L.Ed.2d 674; State v. Bradley (1989), 42 Ohio St.3d 136.
 {¶ 32} Trial counsel is entitled to a strong presumption that his conduct falls within the wide range of reasonable assistance.Id. Hindsight is not permitted to distort the assessment of what was reasonable in light of counsel's perspective at the time, and a debatable decision concerning trial strategy cannot form the basis of a finding of ineffective assistance of counsel.Id.
 {¶ 33} Defendant complains that his trial counsel performed deficiently because he failed to use peremptory challenges to remove two jurors, Brown and Tredinnick, whom the trial court had refused to excuse for cause. Defendant had challenged the two jurors for cause, claiming that they could not be fair and impartial. After voir dire by the trial court, during which neither juror indicated that they could not fairly and impartially try this case based upon the evidence presented, the trial court refused to remove them for cause. The trial court was satisfied, and concluded that neither juror's prior personal experience as a crime victim would prevent them from exercising their duties in this case in a fair and impartial manner. Defendant's counsel subsequently used his peremptory challenges to remove other jurors, but not Brown and Tredinnick. On this record, counsel's decision regarding when and how to use his available peremptory challenges constitutes a matter of trial strategy which, even if debatable, cannot constitute constitutionally deficient performance. State v. Groves (June 19, 1989), Warren App. No. C88-11-082; State v. Clayton (1980),62 Ohio St.2d 45.
 {¶ 34} Defendant next complains that his counsel performed deficiently because he failed to object to the prosecutor's statement during closing argument that Defendant had pushed his way into the victim's motel room with a gun that was "cocked sideways like this cause that's how they do it." Defendant claims that no such statement was made by Quirk. Whether the gun was cocked sideways or not is irrelevant. Quirk's testimony clearly establishes that Defendant forced his way into the motel room, and that he had a handgun that he used, pointing it at Quirk, while taking $1,100.00 from him. Defendant has not demonstrated any prejudice flowing from counsel's performance. We cannot clearly find that, but for counsel's failure to object to this comment by the prosecutor, there is a reasonable probability that Defendant would have been acquitted.
 {¶ 35} Next, Defendant complains that his counsel performed deficiently because he failed to object to the prosecutor's comments during closing argument that after Quirk offered to pay Gabrielle's drug debt, Defendant turned the gun on Quirk and said, "I'll take the rest of it." Defendant claims that Quirk's testimony was that Defendant said, "I'll take it all." This claimed misstatement in how the prosecutor characterized the evidence is trivial at best. The point is, and Quirk testified unequivocally, that Defendant took all of the money Quirk had, approximately $1,100.00. There is no reasonable probability of a different outcome in this trial had defense counsel objected to this comment by the prosecutor. No prejudice is demonstrated.
 {¶ 36} Defendant further complains that his trial counsel performed deficiently because he failed to object to the prosecutor's references during closing argument to Defendant's involvement in other drug offenses. We have previously determined that this was not plain error or outcome determinative. Given that fact, and that the trial court instructed the jurors on the very limited purpose for which they could consider evidence of Defendant's involvement in other drug offenses, we cannot say that but for counsel's failure to object there is a reasonable probability of a different outcome in this trial. No prejudice has been demonstrated.
 {¶ 37} Defendant further complains that his counsel performed deficiently because he failed to object to the prosecutor's comments during closing arguments that Defendant threatened to shoot the victims, and from that the jury could conclude that the firearm in Defendant's possession was operable. We have previously determined that these comments were not improper. Therefore, counsel did not perform deficiently by failing to object to them.
 {¶ 38} Finally, Defendant complains that his counsel performed deficiently because his cross-examination of the witnesses was brief and ineffective. Defendant does not point out what he believes counsel should have done but failed to do. We simply note that in discrediting the testimony of the State's primary witness, Quirk, defense counsel aptly pointed out that Quirk himself is a drug user and well-acquainted with Defendant, who was one of Quirk's suppliers. No deficient performance by counsel has been demonstrated.
 {¶ 39} The first assignment of error is overruled.
THIRD ASSIGNMENT OF ERROR
 {¶ 40} APPELLANT'S CONVICTIONS WERE AGAINST THE SUFFICIENCY AND/OR MANIFEST WEIGHT OF THE EVIDENCE."
 {¶ 41} Defendant was found guilty of aggravated robbery in violation of R.C. 2911.01(A)(1) and aggravated burglary in violation of R.C. 2911.11(A)(2). Those statutes provide, respectively:
 {¶ 42} "(A) No person, in attempting or committing a theft offense, as defined in section 2913.01 of the Revised Code, or in fleeing immediately after the attempt or offense, shall do any of the following:
 {¶ 43} "(1) Have a deadly weapon on or about the offender's person or under the offender's control and either display the weapon, brandish it, indicate that the offender possesses it, or use it.
 {¶ 44} "(A) No person, by force, stealth, or deception, shall trespass in an occupied structure or in a separately secured or separately occupied portion of an occupied structure, when another person other than an accomplice of the offender is present, with purpose to commit in the structure or in the separately secured or separately occupied portion of the structure any criminal offense, if any of the following apply: * * *
 {¶ 45} "(2) The offender has a deadly weapon or dangerous ordnance on or about the offender's person or under the offender's control."
 {¶ 46} A sufficiency of the evidence argument challenges whether the State has presented adequate evidence on each element of the offense to allow the case to go to the jury or sustain the verdict as a matter of law. Thompkins, supra. The proper test to apply to such an inquiry is the one set forth in paragraph two of the syllabus of State v. Jenks (1991), 61 Ohio St.3d 259:
 {¶ 47} "An appellate court's function when reviewing the sufficiency of the evidence to support a criminal conviction is to examine the evidence admitted at trial to determine whether such evidence, if believed, would convince the average mind of the defendant's guilt beyond a reasonable doubt. The relevant inquiry is whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt."
 {¶ 48} Defendant does not argue in his brief that the State failed to prove any of the specific elements of either aggravated robbery or aggravated burglary. Instead, he argues that the State failed to prove that Defendant was the person who committed those offenses.
 {¶ 49} As part of its burden in proving that the accused is guilty of committing the offenses charged, beyond a reasonable doubt, the State must prove that the accused is the person who committed the conduct alleged in the indictment, absent which his criminal liability cannot be established. R.C. 2901.21(A). Quirk testified that on the date of the offenses alleged, a person whom he knew as "Dray" forced his way into the motel room and robbed Quirk and his girlfriend of $1,100.00 at gunpoint. Quirk also testified that he was familiar with Dray because he purchased crack cocaine from him on previous occasions. That evidence, if believed, is sufficient to prove conduct that constitutes the elements of the offenses charged. However, it does not prove that the accused, Andre Felder, is "Dray," the person who engaged in that conduct.
 {¶ 50} At trial, Quirk was not asked to personally identify Defendant, Andre Felder, as "Dray," the perpetrator of these offenses. Neither did any other witness personally identify Defendant in open court as the perpetrator. However, other evidence rendered that specific proof unnecessary.
 {¶ 51} Detective Ward testified that Quirk called him on September 9, 2004 and left a message saying that he saw "Dray," the perpetrator of these offenses, in a Channel 7 television news story being led into or out of Greene County jail. Quirk called Detective Ward again and told him that the perpetrator's name was Andre Felder. Detective Ward contacted Greene County authorities, who confirmed that they had taken an Andre Felder into custody on that date and that Channel 7 had filmed it. Detective Ward also obtained a copy of the video news story from Channel 7. That video was subsequently played for the jury at trial.
 {¶ 52} Quirk testified at trial that the person wearing a blue and white basketball suit whom when he identified in the video news footage as "Dray" is the person who robbed him. That person was identified in the tape as "Andre Felder." Having watched the video news footage, the jury could find that the accused who was then before them in person was the person in the video news tape they saw, and therefore the person charged in the indictment concerning which the State's substantive evidence was offered, Andre Felder.
 {¶ 53} The evidence presented by the State, particularly Quirk's testimony, when construed in a light most favorable to the State, is such that a rational trier of facts could find all of the essential elements of the offenses proved beyond a reasonable doubt. Defendant's convictions are supported by legally sufficient evidence.
 {¶ 54} A weight of the evidence argument challenges the believability of the evidence and asks which of the competing inferences suggested by the evidence is more believable or persuasive. State v. Hufnagle (Sept. 6, 1996), Montgomery App. No. 15563, unreported. The proper test to apply to that inquiry is the one set forth in State v. Martin (1983),20 Ohio App.3d 172, 175:
 {¶ 55} "[t]he court, reviewing the entire record, weighs the evidence and all reasonable inferences, considers the credibility of witnesses and determines whether in resolving conflicts in the evidence, the jury lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered." Accord: State v. Thompkins,78 Ohio St.3d 380, 1997-Ohio-52.
 {¶ 56} The credibility of the witnesses and the weight to be given to their testimony is a matter for the trier of facts to resolve. State v. DeHass (1967), 10 Ohio St.2d 230. In Statev. Lawson (August 22, 1997), Montgomery App. No. 16288, we observed:
 {¶ 57} "[b]ecause the factfinder . . . has the opportunity to see and hear the witnesses, the cautious exercise of the discretionary power of a court of appeals to find that a judgment is against the manifest weight of the evidence requires that substantial deference be extended to the factfinder's determinations of credibility. The decision whether, and to what extent, to credit the testimony of particular witnesses is within the peculiar competence of the factfinder, who has seen and heard the witness." Id., at p. 4.
 {¶ 58} This court will not substitute its judgment for that of the trier of facts on the issue of witness credibility unless it is patently apparent that the trier of facts lost its way in arriving at its verdict. State v. Bradley (Oct. 24, 1997), Champaign App. No. 97-CA-03.
 {¶ 59} Defendant argues that the credibility of the State's primary witness, Quirk, is suspect and not worthy of belief because he is a crack addict who purchased cocaine on previous occasions from Defendant, and Quirk didn't like Defendant or the quality of his drugs. The credibility of the witnesses and the weight to be given to their testimony were matters for the jury to resolve. DeHass, supra. By their verdict, the jurors obviously chose to believe Quirk's version of these events, which they were entitled to do.
 {¶ 60} Reviewing this record as a whole, we cannot clearly find that the evidence weighs heavily against a conviction, that the jury lost its way in choosing to believe the State's witnesses, or that a manifest miscarriage of justice has occurred. Defendant's convictions are not against the manifest weight of the evidence.
 {¶ 61} The third assignment of error is overruled.
FOURTH ASSIGNMENT OF ERROR
 {¶ 62} "THE TRIAL COURT ERRED IN IMPOSING RESTITUTION WITHOUT PROPER CONSIDERATION OF APPELLANT'S ABILITY TO PAY."
 {¶ 63} R.C. 2929.18(A)(1) authorizes the trial court to impose financial sanctions as part of its sentence, including restitution in an amount based upon the victim's economic loss. Quirk testified at trial that Defendant robbed him of $1,100.00 at gunpoint. Thus, there is competent, credible evidence in this record to determine the amount of Quirk's economic loss, and to award restitution to Quirk based upon that amount, which the trial court did. R.C. 2929.19(B)(6) requires the trial court to consider a Defendant's present and future ability to pay before imposing any financial sanction under R.C. 2929.18. Defendant argues that the trial court did not do that in this case.
 {¶ 64} A hearing on a defendant's ability to pay is not mandated, though the trial court may hold a hearing if necessary to determine the issue. R.C. 2929.18(E). Neither is the court obligated to make any express findings on the record regarding a defendant's ability to pay a financial sanction, although in our opinion that is clearly the better practice. State v. Ayers
(January 7, 2005), Greene App. No. 2004CA0034, 2005-Ohio-44. All that is required is that the trial court "consider" a defendant's ability to pay. Id. A finding that a defendant is indigent for purposes of appointed counsel does not shield the defendant from paying court costs or a financial sanction. Id.
 {¶ 65} The presentence investigation report that the trial court had ordered recited information about Defendant's age, education, and employment history, stating that Defendant is a self-employed drywall worker. That, coupled with the fact that at the sentencing hearing the trial court indicated that it had considered the presentence report, is sufficient to demonstrate that the trial court considered Defendant's ability to pay a financial sanction. Ayers, supra; State v. Parker (March 19, 2004), Champaign App. No. 03CA17, 2004-Ohio-1313; State v.Dunaway (March 10, 2003), Butler App. No. CA2001-122-80, 2003-Ohio-1062.
 {¶ 66} Defendant's fourth assignment of error is overruled. The judgment of the trial court will be affirmed.
Wolff, J. And Donovan, J., concur.