OPINION
{¶ 1} Defendant, Samuel Skipper, appeals from his conviction and sentence for robbery and receiving stolen property.
 {¶ 2} The evidence presented at trial demonstrates that on October 1, 2004, ninety-three year old Dorothy Wildern went to the Fifth Third Bank in Trotwood to cash her pension check. She put the money into her beige purse which she carries on her left arm. Bank surveillance video shows that Defendant was inside the bank at the same time as Wildern. Defendant watched Wildern, and he left the bank just twenty seconds after she did.
 {¶ 3} After Wildern left the bank she went to a post office where she mailed a letter at the drive-through, and from there she went to the CVS pharmacy at 1001 E. Main Street in Trotwood. Wildern parked her car near the front entrance and walked toward the front doors. Just as Wildern reached the front doors, someone grabbed Wildern's left arm and stole her purse containing her money and credit cards. As her purse was ripped off her arm, Wildern was able to get a good look at her assailant before he ran away with her purse.
 {¶ 4} Wildern identified Defendant as her assailant both from a police photospread and at trial. When Defendant grabbed Wildern's arm he tore her skin, causing it to bleed so badly that Wildern was taken to Good Samaritan Hospital for treatment. Wildern did not, of course, give Defendant permission to take her purse or credit cards.
 {¶ 5} Cornelia Smothers was inside the Trotwood physicians' office building on Olive Road just across from CVS when this purse snatching occurred. She observed an African-American male, 5'2"-5'4", wearing a white tank top, jeans and a ballcap, running through the CVS parking lot with a beige pocketbook in his hand. The man ran behind the physician's office building and got into the passenger side of a red Chevy Blazer, whereupon the woman driver sped away down Olive Road toward Salem Avenue.
 {¶ 6} Defendant's former girlfriend, Kristen Bodiker, testified at trial that Defendant lived with her during October 2004, and that he often drove her red Chevy Blazer. Upon watching the surveillance videotape from Fifth Third Bank, Bodiker identified Defendant as the man pictured inside the bank.
 {¶ 7} Detective Turner from the Trotwood police learned through investigation that Wildern's credit card had been used to pay a phone bill for two cell phones registered to Defendant and Karla Hairston. When Detective Turner questioned Defendant, he denied being inside Fifth Third Bank or committing this robbery. He claimed that he had loaned Bodiker's red Blazer to Hairston, who then used it to commit this robbery with a man named Drey, and that Hairston and Drey then brought the stolen purse to Defendant. At trial, Defendant admitted using Wildern's stolen credit card to pay his cell phone bill.
 {¶ 8} Defendant was indicted on one count of robbery involving the infliction of physical harm, R.C. 2911.02(A(2), one count of robbery involving the use of force, R.C. 2911.02(A)(3), and one count of receiving stolen property (credit card), R.C.2913.51(A). Following a jury trial, Defendant was found guilty of robbery (inflicting physical harm) and receiving stolen property. The State dismissed the other robbery charge. The trial court sentenced Defendant to consecutive, maximum prison terms of eight years for robbery and twelve months for receiving stolen property, for a total of nine years.
 {¶ 9} Defendant timely appealed to this court from his conviction and sentence.
FIRST ASSIGNMENT OF ERROR
 {¶ 10} "WHETHER THE VERDICT WAS AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE AND WHETHER THERE WAS SUFFICIENT EVIDENCE TO CONVICT."
 {¶ 11} A sufficiency of the evidence argument challenges whether the State has presented adequate evidence on each element of the offense to allow the case to go to the jury or sustain the verdict as a matter of law. Thompkins, supra. The proper test to apply to such an inquiry is the one set forth in paragraph two of the syllabus of State v. Jenks (1991), 61 Ohio St.3d 259:
 {¶ 12} "An appellate court's function when reviewing the sufficiency of the evidence to support a criminal conviction is to examine the evidence admitted at trial to determine whether such evidence, if believed, would convince the average mind of the defendant's guilt beyond a reasonable doubt. The relevant inquiry is whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt."
 {¶ 13} Defendant was found guilty of robbery in violation of R.C. 2911.02(A)(2). That section provides:
 {¶ 14} "No person, in attempting or committing a theft offense or in fleeing immediately after the attempt or offense, shall * * * "[i]nflict, attempt to inflict, or threaten to inflict physical harm on another."
 {¶ 15} Defendant was also convicted of receiving stolen property in violation of R.C. 2913.51(A). That section provides:
 {¶ 16} "No person shall receive, retain, or dispose of property of another knowing or having reasonable cause to believe that the property has been obtained through commission of a theft offense."
 {¶ 17} Defendant does not argue that the State failed to prove any of the specific elements of either robbery or receiving stolen property. Instead, he complains that the evidence was insufficient to sustain the guilty verdicts because only one person was able to identify Defendant as the perpetrator, and that person was not one hundred percent certain.
 {¶ 18} As part of its burden in proving that the accused is guilty of committing the offenses charged beyond a reasonable doubt, the State must prove that the accused is the person who committed the conduct alleged in the indictment, absent which his criminal liability cannot be established. State v. Felder (May 5, 2006), Montgomery App. No. 21076, 2006-Ohio-2330.
 {¶ 19} The victim, Dorothy Wildern, identified Defendant before trial from a six picture police photospread as the robber who stole her purse, and she did so without looking at the photographs for long. Additionally, Wildern identified Defendant at trial as the man who snatched her purse, and she indicated that there is no doubt in her mind that Defendant is the sole perpetrator. That evidence, when construed in a light most favorable to the State, is such that a rational trier of facts could find Defendant's identity as the perpetrator of these offenses proved beyond a reasonable doubt. Defendant's convictions are supported by legally sufficient evidence.
 {¶ 20} A weight of the evidence argument challenges the believability of the evidence and asks which of the competing inferences suggested by the evidence is more believable or persuasive. State v. Hufnagle (Sept. 6, 1996), Montgomery App. No. 15563, unreported. The proper test to apply to that inquiry is the one set forth in State v. Martin (1983),20 Ohio App.3d 172, 175:
 {¶ 21} "[t]he court, reviewing the entire record, weighs the evidence and all reasonable inferences, considers the credibility of witnesses and determines whether in resolving conflicts in the evidence, the jury lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered." Accord: State v. Thompkins,78 Ohio St.3d 380, 1997-Ohio-52.
 {¶ 22} The credibility of the witnesses and the weight to be given to their testimony is a matter for the trier of facts to resolve. State v. DeHass (1967), 10 Ohio St.2d 230. In Statev. Lawson (August 22, 1997), Montgomery App. No. 16288, we observed:
 {¶ 23} "[b]ecause the factfinder . . . has the opportunity to see and hear the witnesses, the cautious exercise of the discretionary power of a court of appeals to find that a judgment is against the manifest weight of the evidence requires that substantial deference be extended to the factfinder's determinations of credibility. The decision whether, and to what extent, to credit the testimony of particular witnesses is within the peculiar competence of the factfinder, who has seen and heard the witness." Id., at p. 4.
 {¶ 24} This court will not substitute its judgment for that of the trier of facts on the issue of witness credibility unless it is patently apparent that the trier of facts lost its way in arriving at its verdict. State v. Bradley (Oct. 24, 1997), Champaign App. No. 97-CA-03.
 {¶ 25} In arguing that his conviction is against the manifest weight of the evidence, Defendant points to inconsistencies and inaccuracies in the description of the robber. For instance, Cornelia Smothers identified the man she saw running away from the CVS pharmacy with a beige pocketbook in his hand as being an African-American male, 5'2"-5'4", with a beard. Defendant is 5'10" and does not have a beard. Smothers also testified, however, that the man she saw was wearing a white top, which is consistent with the victim's testimony. Smothers further testified the robber fled in a red Chevy Blazer driven by a female. Defendant's former girlfriend, Kristen Bodiker, testified that Defendant often drove her red Blazer during this period of time, and Defendant himself told Detective Turner that although he did not commit this robbery, he had loaned Bodiker's red Blazer to Karla Hairston, who used it to commit this robbery with the help of another man.
 {¶ 26} The credibility of the witnesses and the weight to be given to their testimony are matters for the trier of facts to resolve. DeHass, supra. The jury did not lose its way simply because it chose to believe Wildern's version of the events rather than Defendant's claim that he merely used Wildern's stolen credit card to pay his phone bill, and was not involved in snatching Wildern's purse.
 {¶ 27} Reviewing this record as a whole, we cannot clearly find that the evidence weighs heavily against a conviction, that the jury lost its way in choosing to believe the State's witnesses, or that a manifest miscarriage of justice has occurred. Defendant's convictions are not against the manifest weight of the evidence.
 {¶ 28} The first assignment of error is overruled.
SECOND ASSIGNMENT OF ERROR
 {¶ 29} "WHETHER TRIAL COURT ERRED BY ALLOWING A DISCRIMINATORY JURY POOL."
 {¶ 30} Defendant argues that his Sixth Amendment right to a jury trial was violated because African-Americans were under-represented in the pool of prospective jurors called to hear Defendant's case.
 {¶ 31} At trial, Defendant challenged the pool of prospective jurors because of the absence of minorities. The trial court overruled that challenge, noting that while there was one minority member, which is consistent with what the court customarily sees in the array, the courts' efforts in Montgomery County to get more minorities involved in jury service have been largely unsuccessful. Defendant argues that when a county that has a large minority population consistently obtains jury pools with no or very few minorities, it is clear that the jury selection system is discriminatory and needs to be fixed.
 {¶ 32} The selection of a petit jury from a representative cross-section of the community is an essential component of the Sixth Amendment right to jury trial. State v. Jones,91 Ohio St.3d 335, 2001-Ohio-57. However, the Sixth Amendment does not require that petit juries mirror the community and reflect the various distinctive groups in the population. Id. Defendants are not entitled to a jury of any particular composition, but pools of names or venires from which juries are drawn must not systematically exclude distinctive groups in the community and thereby fail to be reasonably representative. Id.
 {¶ 33} In order to establish a prima facie violation of the Sixth Amendment's fair cross-section requirement, a defendant must demonstrate (1) that the group alleged to be excluded is a distinctive group in the community; (2) that the representation of this group in venires from which juries are selected is not fair and reasonable in relation to the number of such persons in the community; and (3) that the under-representation is due to systematic exclusion of the group in the jury selection process.Duren v. Missouri (1979), 439 U.S. 357, 99 S.Ct. 664,58 L.Ed.2d 579; Jones, supra.
 {¶ 34} Although the first prong of the Duren analysis is satisfied here, because African-Americans are a distinctive group for purposes of the fair cross-section requirement, absolutely no evidence was presented to satisfy the second and third prongs of the Duren test. There is no evidence in this case which demonstrates that the number of African-Americans summoned to court as prospective jurors in Montgomery County is not fair and reasonable in relation to the number of such persons in the community, nor is there any evidence that any under-representation is due to systematic exclusion of African-Americans in the jury selection process. In that regard, the trial court noted on the record that the Montgomery County court system makes every effort to try and get more minorities involved in jury service, but with little success. On this record no violation of the Sixth Amendment's fair cross-section requirement has been demonstrated.
 {¶ 35} The second assignment of error is overruled.
THIRD ASSIGNMENT OF ERROR
 {¶ 36} "WHETHER THE TRIAL COURT ERRED IN SENTENCING APPELLANT TO THE MAXIMUM CONSECUTIVE SENTENCES."
 {¶ 37} Defendant argues that the trial court erred in imposing maximum and consecutive prison terms because the court failed to make some of the findings required by R.C.2929.14(E)(4) in order to impose consecutive sentences, and the finding that the court did make pursuant to R.C. 2929.14(C) in order to justify maximum sentences, which is that Defendant committed the worst form of the offenses, is not supported by the record.
 {¶ 38} In State v. Foster, 109 Ohio St.3d 1, 2006-Ohio-856, the Ohio Supreme Court held that R.C. 2929.14(C), (E)(4), and R.C. 2929.19(B)(2), which require certain findings and reasons in order to justify maximum and consecutive sentences, are unconstitutional because they require judicial fact finding that violates a defendant's Sixth Amendment right to jury trial on facts relied upon to enhance a sentence, per Blakely v.Washington (2004), 542 U.S. 296, 124 S.Ct. 2531,159 L.Ed. 2d 403. To remedy this problem Foster severed those provisions from the remainder of the sentencing statutes. Now, trial courts have full discretion to impose any sentence within the applicable statutory range and courts are no longer required to make findings or give their reasons for imposing maximum, consecutive, or more than minimum sentences. Foster, at ¶ 100; State v.Mathis, 109 Ohio St.3d 54, 2006-Ohio-855. In any case where sentence is imposed upon a finding made pursuant to a statutory provision that Foster declared unconstitutional, reversal and remand for resentencing is required if that case was pending on direct review at the time Foster was decided. Id., at ¶ 104-106. That is the case here. Defendant's sentences will be reversed and the case remanded for resentencing in accordance with Foster.
 {¶ 39} The third assignment of error is sustained. Although Defendant's convictions will be affirmed, his sentences will be reversed and the case remanded for resentencing within the applicable statutory ranges established by R.C. 2929.14(A)(2) and (5), per Foster.
Brogan, J. And Wolff, J., concur.