OPINION
{¶ 1} Defendant, Joseph McCaleb, appeals from his conviction and sentence for violating a civil protection order.
 {¶ 2} In October 2004, Lyndsay Hangen obtained a civil protection order against Defendant from the Greene County Domestic Relations Court, pursuant to R.C. 3113.31. The terms of that protection order prohibited Defendant from having any contact with Hangen, by telephone or any other means. Shortly after the issuance of the protection order, Hangen began receiving cell phone text messages that originated from Defendant's cell phone, attempting to persuade her to drop the protection order. On January 10, 2005, Hangen received an additional seven or eight such text messages.
 {¶ 3} After Hangen reported those contacts to police, Defendant was charged by complaint in Fairborn Municipal Court with violation of a protection order, a first degree misdemeanor. R.C. 2919.27(A)(2), (B)(2). Defendant waived his right to counsel and elected to represent himself. Following a trial to the court, Defendant was found guilty of violating a protection order. The trial court sentenced Defendant to ninety days in jail, placed him on probation for five years, and fined him two hundred and fifty dollars. Defendant was also ordered to not post on his internet website any reference to Hangen or any of the other participants in the case.
 {¶ 4} Defendant timely appealed to this court from his conviction and sentence.
 {¶ 5} FIRST ASSIGNMENT OF ERROR
 {¶ 6} "DEFENDANT-APPELLANT JOSEPH MC CALEB'S CONVICTION FOR VIOLATING A CIVIL PROTECTION ORDER WAS SUPPORTED BY INSUFFICIENT EVIDENCE OF GUILT AND WAS AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE."
 {¶ 7} A sufficiency of the evidence argument challenges whether the State has presented adequate evidence on each element of the offense to allow the case to go to the jury or sustain the verdict as a matter of law. Thompkins, supra. The proper test to apply to such an inquiry is the one set forth in paragraph two of the syllabus of State v. Jenks (1991), 61 Ohio St.3d 259:
 {¶ 8} "An appellate court's function when reviewing the sufficiency of the evidence to support a criminal conviction is to examine the evidence admitted at trial to determine whether such evidence, if believed, would convince the average mind of the defendant's guilt beyond a reasonable doubt. The relevant inquiry is whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt."
 {¶ 9} A weight of the evidence argument challenges the believability of the evidence and asks which of the competing inferences suggested by the evidence is more believable or persuasive. State v. Hufnagle (Sept. 6, 1996), Montgomery App. No. 15563, unreported. The proper test to apply to that inquiry is the one set forth in State v. Martin (1983),20 Ohio App.3d 172, 175:
 {¶ 10} "[t]he court, reviewing the entire record, weighs the evidence and all reasonable inferences, considers the credibility of witnesses and determines whether in resolving conflicts in the evidence, the jury lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered." Accord: State v. Thompkins,78 Ohio St.3d 380, 1997-Ohio-52.
 {¶ 11} The credibility of the witnesses and the weight to be given to their testimony is a matter for the trier of facts to resolve. State v. DeHass (1967), 10 Ohio St.2d 230. In Statev. Lawson (August 22, 1997), Montgomery App. No. 16288, we observed:
 {¶ 12} "[b]ecause the factfinder . . . has the opportunity to see and hear the witnesses, the cautious exercise of the discretionary power of a court of appeals to find that a judgment is against the manifest weight of the evidence requires that substantial deference be extended to the factfinder's determinations of credibility. The decision whether, and to what extent, to credit the testimony of particular witnesses is within the peculiar competence of the factfinder, who has seen and heard the witness." Id., at p. 4.
 {¶ 13} This court will not substitute its judgment for that of the trier of facts on the issue of witness credibility unless it is patently apparent that the trier of facts lost its way in arriving at its verdict. State v. Bradley (Oct. 24, 1997), Champaign App. No. 97-CA-03.
 {¶ 14} As part of its burden in proving that the accused is guilty of committing the offense charged, the State must prove, beyond a reasonable doubt, that the accused is the person who committed the conduct alleged in the complaint or indictment, absent which his criminal liability cannot be established. Statev. Skipper (July 28, 2006), Montgomery App. No. 21239, 2006-Ohio-3857; State v. Felder (May 5, 2006), Montgomery App. No. 21076, 2006-Ohio-2330.
 {¶ 15} R.C. 2919.27(A)(2) states: "No person shall recklessly violate the terms of . . . [a] protection order issued pursuant to section . . . 3113.31 of the Revised Code." Defendant argues that the evidence is legally insufficient to sustain his conviction for violating a protection order because, although the evidence demonstrates that the phone from which the text messages were sent to Hangen belonged to Defendant, there is no evidence that Defendant at that time had physical possession of the phone or that Defendant, instead of someone else, composed and sent those messages. In other words, there was no direct evidence showing that Defendant sent any text messages to Hangen.
 {¶ 16} The protective order limited Defendant's conduct, and by its terms encompassed Defendant's use of his cell phone to contact Hangen. The fact that the text messages Hangen received came from Defendant's cell phone creates a presumption that he sent the messages. However, standing alone, that evidence does not show, beyond a reasonable doubt, that Defendant was the person who sent the messages Hangen received. For that purpose, there must be additional evidence connecting Defendant to those messages, and there is.
 {¶ 17} The parties stipulated that on January 10, 2005, a civil protection order was in effect that prohibited Defendant from having any contact, by any means, with Hangen. On January 10, 2005, Hangen received seven or eight text messages on her cell phone. The phone from which the text messages to Hangen originated belonged to Defendant. Hangen recognized the phone number as being Defendant's, and she testified that she had received many phone calls from Defendant from that same phone number, even before the protection order issued.
 {¶ 18} Hangen further testified that no one other than Defendant had ever text messaged her, and that the content of the text messages concerned only the protection order against Defendant and was written in the first person, referring to "I" and "me". Additionally, during his cross-examination of Hangen, Defendant repeatedly referred to conversations between him and Hangen that were subsequent to the protection order, including one that was face-to-face. Those contacts lend weight and credibility to Hangen's testimony that it was Defendant who contacted her by text message on January 10, 2005.
 {¶ 19} This evidence is circumstantial, but circumstantial evidence possesses no less probative value than direct evidence.State v. Jenks. This evidence, if believed, and when construed in a light most favorable to the State, permits a reasonable inference by the trier of facts that is sufficient to prove, beyond a reasonable doubt, that Defendant sent the text messages to Hangen on January 10, 2005, violating the protection order requiring him to have no contact with Hangen. Defendant's conviction is supported by legally sufficient evidence. Furthermore, reviewing the record as a whole, we cannot clearly find that the evidence weighs heavily against a conviction, that the court as trier of facts lost its way, or that a manifest miscarriage of justice occurred. Defendant's conviction is not against the manifest weight of the evidence.
 {¶ 20} The first assignment of error is overruled.
 {¶ 21} SECOND ASSIGNMENT OF ERROR
 {¶ 22} "THE TRIAL COURT ERRED IN DENYING DEFENDANTA-PPELLANT JOSEPH MC CALEB'S MOTION FOR NEW TRIAL ON THE BASIS OF NEWLY DISCOVERED EVIDENCE."
 {¶ 23} Defendant timely filed a motion for a new trial based upon newly discovered evidence. Crim.R. 33(A)(6), (B). In support of his motion, Defendant submitted an affidavit from Kamilah Wiley. This new witness claims that she was in possession of Defendant's cell phone during December 2004 and January 2005, which covers the time in which Hangen received the text messages originating from Defendant's cell phone, and that she "responded" to Hangen's text messages.
 {¶ 24} Before a new trial can be granted upon the basis of newly discovered evidence, the defendant must show that the new evidence (1) discloses a strong probability that it will change the result if a new trial is granted, (2) has been discovered since the trial, (3) is such as could not in the exercise of due diligence have been discovered before the trial, (4) is material to the issues, (5) is not merely cumulative to former evidence, and (6) does not merely impeach or contradict the former evidence. Dayton v. Martin (1987), 43 Ohio App.3d 87; State v.Petro (1947), 148 Ohio St. 505.
 {¶ 25} The evidence in this case that Defendant claims to be newly discovered since the trial, that Kamilah Wiley was in possession of Defendant's cell phone during the relevant time periods when the text messages to Hangen were sent, does not satisfy the Petro standards for newly discovered evidence.
 {¶ 26} The cell phone from which the text messages to Hangen were sent belonged to Defendant. That is clear from the testimony of both Hangen and Defendant's father, who pays the bill for Defendant's phone. If Defendant gave that phone to Wiley to use during the relevant time periods, as he now claims, it logically follows that he knew Wiley had the phone. Neither the affidavit of Wiley or Defendant claims that Wiley had Defendant's cell phone without Defendant's knowledge or
 {¶ 27} consent. This evidence clearly could have been discovered before trial in the exercise of due diligence. Crim.R. 33(A)(6). Therefore, the trial court did not err when it denied Defendant's motion for a new trial.
 {¶ 28} The second assignment of error is overruled.
 {¶ 29} THIRD ASSIGNMENT OF ERROR
 {¶ 30} "THE TRIAL COURT ERRED IN SENTENCING DEFENDANTA-PPELLANT JOSEPH MC CALEB TO A TERM OF INCARCERATION, GIVEN THAT HE HAD NO PHYSICAL CONTACT WITH THE VICTIM."
 {¶ 31} Defendant argues that the trial court erred in imposing a harsh ninety day jail sentence upon him because that sentence was not based upon consideration of the sentencing factors in R.C. 2929.22(B) and the two overriding purposes of misdemeanor sentencing set out in R.C. 2929.21(A), but rather resulted from the court's frustration with Defendant's exercise of his constitutional rights to take this case to trial and discuss this case and its participants on his internet website.
 {¶ 32} The evidence presented during the trial clearly demonstrated that Defendant was guilty of violating the "no contact" provision in the civil stalking protection order Hangen obtained from the Greene County Domestic Relations Court. Furthermore, the evidence strongly suggests that each party was trying to utilize the legal system to manipulate the other person. That prompted the court at the conclusion of the trial, after finding Defendant guilty, to express some frustration over the parties having used the legal system for their own personal purposes, and the fact that this busy municipal court did not have time for that.
 {¶ 33} At the sentencing hearing the following discussion transpired concerning Defendant talking about this case and all of the participants on his own internet website:
 {¶ 34} "THE COURT: I have a question. Mr. McCaleb, why do you feel it necessary to put everything about this case and your feelings on your website? Why do you do that? Does it make you feel better? Or, are you venting: Or, are you trying to upset Ms. Hangen? Are you trying to upset Ms. Boyer? Are you trying to upset me? Why are you referring to all of us on the website?
 {¶ 35} "THE DEFENDANT: It's just venting. In fact, I've (inaudible) going up on there, and I can put a password on there now. I mean, it's nothing against them. It's just how I feel.
 {¶ 36} "THE COURT: Why can't you do that on a piece of paper and tear it up? That's what most people do when they vent. Most people don't put this out to the public. You have no idea of how that makes you look.
 {¶ 37} "THE DEFENDANT: I think people have the right to know what's going on here.
 {¶ 38} "THE COURT: Well, I'm going to prevent part of that as part of my sentence. That's going to be just part of it, because you're not going to refer to Ms. Hangen in any way, shape, or form." (T. 69).
 {¶ 39} The trial court sentenced Defendant to one hundred eighty days in jail, but suspended ninety days and placed Defendant on five years probation on several conditions, including that Defendant commit no further violations of the law for five years, that Defendant have no contact of any kind with Hangen for five years, and that Defendant not refer to Hangen or any of the other participants in this case on his or any other website. Defendant argues that this sentence is a product of the court's resentment over his taking this case to trial and exercising his First Amendment right to discuss this case in public, rather than a consideration of the applicable sentencing factors and the overriding purposes of misdemeanor sentencing. We disagree.
 {¶ 40} The two overriding purposes of misdemeanor sentencing are (1) to protect the public from future crime by the offender, and (2) to punish the offender. R.C. 2929.21(A). Unless a mandatory jail term is required, in imposing a sentence for a misdemeanor courts have discretion to determine the most effective way to achieve the purposes set out in R.C. 2929.21(A). R.C. 2929.22(A). In determining the appropriate sentence for a misdemeanor, the court must consider a number of factors, including the nature and circumstances of the offense, whether the offender's character and condition reveal a substantial risk that the offender will commit another offense or will be a danger to others, and any other factor relevant to achieving the purposes of misdemeanor sentencing. R.C. 2929.22(B)(1) and (2).
 {¶ 41} The sentence imposed in this case is within the statutory limits for a first degree misdemeanor. R.C.2929.24(A)(1). When determining a misdemeanor sentence, R.C.2929.22 does not mandate that the record reveal the trial court's consideration of the statutory sentencing factors. Rather, appellate courts will presume that the trial court considered the factors set forth in R.C. 2929.22 when the sentence is within the statutory limits, absent an affirmative showing to the contrary.State v. Kelly (June 17, 2005), Greene App. No. 2004CA122,2005-Ohio-3058.
 {¶ 42} The trial court reviewed the presentence investigation report and the State's sentencing memorandum. The court also considered Defendant's statements. The court mentioned several factors it considered in sentencing that were of concern, including the fact that Defendant is a dangerous man, someone who characterizes himself on his website as a stalker. Defendant's conduct in this case was serious, and the court concluded that the chances of recidivism are very high because Defendant is in absolute denial of everything he did. These remarks by the trial court affirmatively demonstrate that it did consider the sentencing factors in R.C. 2929.22(B), including the nature and circumstances of the offense, whether Defendant poses a danger, and the risk of recidivism. No error in sentencing Defendant to a term of imprisonment is demonstrated on this record.
 {¶ 43} The third assignment of error is overruled.
 {¶ 44} FOURTH ASSIGNMENT OF ERROR
 {¶ 45} "THE TRIAL COURT VIOLATED DEFENDANT-APPELLANT JOSEPH MC CALEB'S FIRST AMENDMENT RIGHTS BY PRECLUDING HIM AS A COMPONENT OF HIS SENTENCE FROM POSTING INFORMATION ABOUT HIS CASE ON THE INTERNET."
 {¶ 46} Defendant argues that the trial court abused its discretion by imposing a condition of probation (community control), specifically that Defendant "not refer to Hangen or the participants in this case on any website," which is overly broad, unduly restrictive, and unconstitutional because it violates Defendant's First Amendment free speech rights.
 {¶ 47} Pursuant to R.C. 2929.25(A)(1), a court as part of its sentence for a misdemeanor is authorized to impose a community control sanction that consists of any condition of release it considers appropriate. While a court possesses broad discretion in determining the conditions of community control, its discretion is not unlimited. State v. Jones (1990),49 Ohio St.3d 51; State v. Kuhn (December 23, 2005), Montgomery App. No. 20912, 2005-Ohio-6836. Any sanction, rationally interpreted, must relate to the crime of which the defendant was convicted and, without being unduly restrictive, be reasonably related to the defendant's rehabilitation and serve the statutory purposes of his release in lieu of incarceration. Id. In addition, a condition of community control must not be unlawful or unconstitutional. State v. Mueller (1997), 122 Ohio App.3d 483,485.
 {¶ 48} In State v. Jones, supra, the Ohio Supreme Court established a three part test for conditions of probation:
 {¶ 49} "In determining whether a condition of probation is related to the `interests of doing justice, rehabilitating the offender, and insuring his good behavior,' courts should consider whether the condition (1) is reasonably related to rehabilitating the offender, (2) has some relationship to the crime of which the offender was convicted, and (3) relates to conduct which is criminal or reasonably related to future criminality and serves the statutory ends of probation." Id. at ¶ 53.
 {¶ 50} The purpose of a defendant's release on community control sanctions must be commensurate with the overriding purposes of misdemeanor sentencing in R.C. 2929.21(A), which states: "The overriding purposes of misdemeanor sentencing are to protect the public from future crime by the offender and others and to punish the offender. To achieve those purposes, the sentencing court shall consider the impact of the offense upon the victim and the need for changing the offender's behavior, rehabilitating the offender, and making restitution to the victim of the offense, the public, or the victim and the public."
 {¶ 51} Defendant argues that his community control sanction prohibiting him from referring to Hangen or the participants in this case on any website bears no reasonable relationship to the crime for which he was convicted and is over broad, unduly restrictive, and violates his constitutional rights to free speech. The State disagrees, arguing that the condition is reasonably related to rehabilitating Defendant and insuring his good behavior, because the evidence shows that Defendant harassed Hangen in a number of different ways, including text messaging her and posting remarks about her on his internet websites, and that this condition of community control discourages future communication and further violations of the protection order.
 {¶ 52} A review of the civil protection order sections, R.C.2903.213 and 2903.214, supports a conclusion that the goal of those statutes is to ensure the safety and protection of the victim. The protection order issued in this case by the Domestic Relations Court accomplished that by prohibiting Defendant from having any contact with Lyndsay Hangen by any means or through any person. Defendant was convicted of violating that protection order because he repeatedly contacted Hangen by sending her text messages on her cell phone.
 {¶ 53} With respect to Defendant's condition of community control requiring him "not to refer to Hangen or the participants in this case on any website," we conclude that this condition, as it relates to Defendant's reference on his website to any of the participants in this case other than Hangen, bears no reasonable relationship to the offense for which Defendant was convicted and does not further the goals of the civil protection order statutes. Therefore, that portion of the condition of community control prohibiting Defendant from referring on his website to participants in this case other than Hangen is overly broad and unduly restrictive of Defendant's free speech rights, and is therefore invalid.
 {¶ 54} That same disputed condition of community control, as it relates to Defendant referring to Hangen on his website,could further the goals of the civil stalking protection order sections because the safety and protection of Hangen could be implicated, depending upon what Defendant says about Hangen on his website. However, even if statements Defendant might make about Hangen do not implicate her safety and protection, the prohibition against Defendant's making them is reasonably related to Defendant's rehabilitation. Jones; R.C. 2929.21(A). It is clear from this record that he obsesses on Hangen and their relationship. Prohibiting him from continuing to make statements about Hangen could tend to diminish the obsession by denying Defendant an opportunity to reinforce it. Therefore, the prohibition against making statements on his web site is proper.
 {¶ 55} The community control sanction the trial court ordered is modified to delete the prohibition against referring to any of the participants in the underlying case on his website, except Hangen, to whom the prohibition applies.
 {¶ 56} The fourth assignment of error is sustained, in part, and the judgment and order of the trial court is affirmed, as modified.
Fain, J. and Donovan, J., concur.