[Cite as *State v. Phipps*, 2022-Ohio-1188.]

**IN THE COURT OF APPEALS OF OHIO**
**SECOND APPELLATE DISTRICT**
**MONTGOMERY COUNTY**

| | | |
|---|---|---|
| STATE OF OHIO | : | |
| | : | |
| Plaintiff-Appellee | : | Appellate Case No. 29199 |
| | : | |
| v. | : | Trial Court Case No. 2021-CRB-1567 |
| | : | |
| JAMES PHIPPS, JR. | : | (Criminal Appeal from Municipal Court) |
| | : | |
| Defendant-Appellant | : | |
| | : | |

. . . . . . . . . . .

O P I N I O N

Rendered on the 8th day of April, 2022.

. . . . . . . . . . .

STEPHANIE L. COOK, Atty. Reg. No. 0067101, ANDREW D. SEXTON, Atty. Reg. No. 0070892 and ELAINE BROOKS, Atty. Reg. No. 0100563, Assistant City of Dayton Prosecuting Attorneys, 335 West Third Street, Room 372, Dayton, Ohio 45402
        Attorneys for Plaintiff-Appellee

CHARLES W. SLICER, III, Atty. Reg. No. 0059927, 426 Patterson Road, Dayton, Ohio 45419
        Attorney for Defendant-Appellant

. . . . . . . . . . . . .

TUCKER, P.J.

{¶ 1} James Phipps, Jr. appeals from his conviction following a bench trial on three first-degree misdemeanor counts of violating a domestic-violence protection order.

{¶ 2} Phipps argues that his trial counsel rendered ineffective assistance by making an improper collateral attack on the validity of the protection order and by essentially having him admit his guilt by acknowledging receipt of the order. Phipps also asserts that the protection order was invalid because it was issued on an outdated form. Finally, he claims the trial court erred in failing to inquire into his reason for wanting to discharge his attorney. For the reasons set forth below, we find no merit in Phipps' arguments. Accordingly, the trial court's judgment will be affirmed.

## I. Factual and Procedural Background

{¶ 3} Phipps was charged with six counts of violating a protection order by making phone calls from jail to his girlfriend, the protected person. The order had been issued based on her allegation that Phipps had assaulted her while she was pregnant. Phipps rejected a pretrial offer to plead guilty to one count in exchange for dismissal of the other five. He rejected the offer because he was on parole for a Wisconsin burglary conviction, and he was concerned about the impact a conviction might have on his parole status.

{¶ 4} At trial, the State presented testimony from three witnesses. The first witness was a deputy who testified about serving Phipps with the protection order on April 23, 2021. The second witness was a parole officer who supervised Phipps in Ohio. The parole officer testified about Phipps being taken into custody for the alleged assault. The parole officer then testified about reviewing recordings of six jailhouse telephone calls from

Phipps to his girlfriend. The calls occurred daily from April 27 through May 2, 2021. The parole officer identified the voices of Phipps and his girlfriend based on his familiarity with them. The final witness was a detective who had investigated the girlfriend's assault allegations and the subsequent jailhouse phone calls. The detective testified about how she had obtained the recordings at issue, and she authenticated audio files played in court containing conversations between Phipps and his girlfriend. The detective also acknowledged that the girlfriend had appeared in domestic-relations court and had sought dismissal of the protection order on April 29, 2021, claiming that she no longer feared Phipps. The detective acknowledged that the assault charge ultimately was dismissed and that an entry was filed terminating the protection order on May 3, 2021.

{¶ 5} Based on the evidence presented, the trial court found Phipps guilty of violating a no-contact provision in the protection order by calling his girlfriend three times between April 27 and April 29, 2021. The trial court found him not guilty for three calls made after April 29, 2021, which was the date his girlfriend moved for termination of the protection order. The trial court imposed consecutive 180-day jail sentences with credit for time served and suspended the remaining balance of the sentences. The trial court also imposed non-reporting probation. This appeal followed.

## II. Analysis

{¶ 6} Phipps advances the following three assignments of error:

I. APPELLANT WAS DENIED HIS CONSTITUTIONAL RIGHT TO EFFECTIVE ASSISTANCE OF COUNSEL.

II. THE PROTECTION ORDER AT ISSUE WAS OUT OF COMPLIANCE

WITH THE RULES OF SUPERINTENDENCE, AND WAS INVALID; THE COURT ERRED IN ITS RULING ON THE SUFFICIENCY OF THE FORM.

III. THE TRIAL COURT ERRED IN FAILING TO CONDUCT AN INQUIRY INTO APPELLANT'S ASSERTION THAT HE HAD RECEIVED INEFFECTIVE ASSISTANCE OF COUNSEL AND WANTED TO FIRE HIS COUNSEL.

{¶ 7} In his first assignment of error, Phipps contends his trial counsel provided ineffective assistance by arguing that a protection order never should have been issued and by essentially having him admit his guilt by acknowledging receipt of the order. Phipps suggests that but for counsel's deficient performance he "might have" accepted the State's plea offer.

{¶ 8} To prevail on an ineffective-assistance claim, a defendant must establish that counsel's performance was deficient and that the deficient performance prejudiced him. *Strickland v. Washington*, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984), paragraph two of the syllabus; *State v. Bradley*, 42 Ohio St.3d 136, 538 N.E.2d 373 (1989), paragraph two of the syllabus. A failure to establish either deficient performance or prejudice defeats an ineffective-assistance claim. *Strickland* at 697. To establish deficient performance, a defendant must show that counsel's performance fell below an objective standard of reasonable representation. *Id.* at 688; *Bradley* at 142. To establish prejudice, a defendant must show "a reasonable probability that, but for counsel's errors, the proceeding's result would have been different." *State v. Hale*, 119 Ohio St.3d 118, 2008-Ohio-3426, 892 N.E.2d 864, ¶ 204, citing *Strickland* at 687-688 and *Bradley* at

paragraph two of the syllabus. In evaluating counsel's performance, we "must indulge in a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." *Strickland* at 689. "[A] debatable decision concerning trial strategy cannot form the basis of a finding of ineffective assistance of counsel." *State v. Woullard*, 158 Ohio App.3d 31, 2004-Ohio-3395, 813 N.E.2d 964, ¶ 37 (2d Dist.), citing *Strickland* at 689.

{¶ 9} With the foregoing standards in mind, we see no ineffective assistance of counsel. Phipps rejected a plea deal because he was concerned about the ramifications a conviction might have on his parole status in Wisconsin. Trial Tr. at 7-9. Although he now criticizes his attorney for challenging the validity of the protection order, he fails to identify any other viable strategy. The protection order prohibited Phipps from contacting his girlfriend. The State presented uncontroverted evidence that he had been served with the protection order and that he had violated it by making phone calls to his girlfriend. Defense counsel appears to have done the best he could with these facts. After Phipps rejected a plea deal, defense counsel argued that the protection order never should have been issued, suggested that Phipps' girlfriend had exaggerated or fabricated her allegations, stressed her attempt to have the protection order terminated, and asked the trial court to find Phipps not guilty. Defense counsel's strategy was successful, in part, given that the trial court acquitted Phipps of charges involving phone calls that occurred after his girlfriend sought termination of the protection order. We see no deficient performance.

{¶ 10} We are equally unpersuaded by Phipps' argument about his attorney's

effectively having him admit guilt by having him acknowledge receipt of the protection order. During pretrial discussions before the first witness testified, defense counsel admitted that a protection order had been issued and that Phipps had been served with it. Phipps agreed. As a result, the trial court inquired whether the defense would stipulate to those facts at trial. After conferring with Phipps, defense counsel declined to enter into any stipulation. *Id.* at 11-12. The State proceeded to take testimony from the deputy who served Phipps with a copy of the protection order, thereby establishing Phipps' awareness and receipt of it. In light of Phipps' refusal to enter into a stipulation and the State's uncontroverted proof that he was served with the protection order, we reject the argument that counsel provided ineffective assistance by allowing him to acknowledge receipt of the protection order before the trial began. The first assignment of error is overruled.

{¶ 11} In his second assignment of error, Phipps challenges the validity of the protection order by arguing that it was issued on an outdated form. He notes that the current form took effect April 15, 2021 and that the protection order against him was issued on April 21, 2021 using the prior form. Phipps contends that the use of a form that was outdated by one week rendered the protection order invalid on its face, meaning that his phone calls did not violate anything.[1]  In particular, Phipps references "Form 10-D,"

---

[1] We question whether Phipps' argument about the protection order being on an outdated form constitutes an improper collateral attack on the order. Even if the domestic-relations court used a form that was one week out-of-date, the fact remains that Phipps had been served with a court-issued protection order prohibiting him from contacting his girlfriend. At best, we believe the defect about which he complains conceivably could make the order voidable, not void. If so, he cannot challenge its validity in a criminal case involving his prosecution for violating it. *Compare State v. Ybarra*, 5th Dist. Licking No. 16-CA-16, 2016-Ohio-5761, ¶ 11-13 (holding that the defendant could not collaterally attack a protection order in his prosecution for violating it even if the order was invalid); *City of Westlake v. Patrick*, 8th Dist. Cuyahoga No. 88198, 2007-Ohio-1307, ¶ 7 (reasoning that

which is used to provide a respondent with notice of the existence of a protection order.

{¶ 12} The trial court addressed the foregoing issue, noting that under the Rules of Superintendence, domestic-relations courts are to use forms "substantially similar" to Form 10-D and other specified forms. *Id.* at 118-119. The trial court then examined the pre- and post-April 15, 2021 versions of the forms used and found that they were substantially similar. On appeal, Phipps has not even attempted to demonstrate any error in this conclusion.

{¶ 13} Regarding Form 10-D in particular, commentary following Sup.R. 10 explains that it "was adopted, effective April 15, 2021, to implement R.C. 2919.27(D)," which provides:

> In a prosecution for a violation of [a protection order], it is not necessary for the prosecution to prove that the protection order or consent agreement was served on the defendant if the prosecution proves that the defendant was shown the protection order or consent agreement or a copy of either or a judge, magistrate, or law enforcement officer informed the defendant that a protection order or consent agreement had been issued, and proves that the defendant recklessly violated the terms of the order or agreement.

{¶ 14} Here Phipps was shown the protection order and was served with it. Therefore, to the extent that Form 10-D was adopted to implement R.C. 2919.27(D), it

---

"a party may be criminally punished for violating [a protection] order even though the order is determined to be invalid after the violation has occurred"). Nevertheless, we will address Phipps' argument because the trial court did likewise, and we find it to be without merit in any event.

has no real impact on this case. We note too that the pre-April 15, 2021 forms served on Phipps properly contained a warning about him being prohibited from contacting the protected person by telephone or otherwise. The State also observes that the protection order met the statutory requirements of R.C. 3113.31. For these reasons, we reject the suggestion in Phipps' appellate brief that the protection order was void. The second assignment of error is overruled.

{¶ 15} In his third assignment of error, Phipps contends the trial court erred in failing to inquire into his assertion that he wanted to "fire" his attorney due to ineffective assistance. His argument is predicated on the following exchange that occurred after the State rested its case:

DEFENSE COUNSEL: Judge, I think my client wants to make a motion before the court.

THE DEFENDANT: Can I fire him because I feel like [he] hadn't fully represented me in front of the court?

THE COURT: No. Motion denied. If you feel like you have inefficient, ineffective assistance of counsel, that would be an issue for an appeal. I'm not going to allow you to fire your attorney in the middle of a trial.

Trial Tr. at 122-123.

{¶ 16} In response to his complaint, Phipps claims the trial court was obligated to inquire into the reasons for his dissatisfaction and to make a determination regarding the validity of his concerns. In support, he cites *State v. Deal*, 17 Ohio St.2d 17, 244 N.E.2d 742 (1969). In *Deal*, the defendant complained at the close of the State's case about his

attorney's failure to file a notice of alibi and failure to subpoena witnesses. He requested to dismiss his attorney and to obtain a continuance. The trial court denied the request. The Ohio Supreme Court reversed. Noting the specificity of the defendant's allegations, it found that the trial court had a duty "to see that the record contained an adequate investigation of appellant's complaints." *Id.* at 19. The Ohio Supreme Court reasoned:

> Where, during the course of his trial for a serious crime, an indigent accused questions the effectiveness and adequacy of assigned counsel, by stating that such counsel failed to file seasonably a notice of alibi or to subpoena witnesses in support thereof even though requested to do so by accused, it is the duty of the trial judge to inquire into the complaint and make such inquiry a part of the record. The trial judge may then require the trial to proceed with assigned counsel participating if the complaint is not substantiated or is unreasonable.

*Id.* at syllabus.

{¶ 17} Case law following *Deal* has emphasized, however, that the duty to inquire into a defendant's complaint exists only when specific allegations are made. The Ohio Supreme Court itself has noted that a " 'limited judicial duty arises only if the allegations are sufficiently specific; vague or general objections do not trigger the duty to investigate further.' " *State v. Johnson*, 112 Ohio St.3d 210, 2006-Ohio-6404, 858 N.E.2d 1144, ¶ 68, quoting *State v. Carter*, 128 Ohio App.3d 419, 715 N.E.2d 223 (1998), citing *Deal* at 19; *see also State v. Hibbler*, 2d Dist. Clark No. 2001-CA-43, 2002-Ohio-4464, ¶ 15 (citing cases reading *Deal* "as imposing on a defendant the initial burden of articulating specific

concerns about his appointed counsel" and noting that "[a]bsent specific objections to counsel's performance, the trial court has no duty to investigate anything"); *State v. Simons*, 2d Dist. Champaign No. 99CA5, 2000 WL 1726904, *3 (Nov. 22, 2000) (holding "that the mere claim of a 'conflict of interest,' without more, is not a sufficiently specific allegation to trigger the duty to investigate further").

{¶ 18} Here Phipps requested to fire his attorney on the basis that counsel had not "fully represented" him. This allegation was not sufficiently specific to trigger an obligation by the trial court inquire further. The third assignment of error is overruled.

### III. Conclusion

{¶ 19} Having overruled Phipps' assignments of error, we affirm the judgment of the Dayton Municipal Court, Criminal Division.

. . . . . . . . . . . .

DONOVAN, J. and LEWIS, J., concur.

Copies sent to:

Stephanie L. Cook
Andrew D. Sexton
Elaine Brooks
Charles W. Slicer, III
Hon. Deirdre E. Logan