[Cite as *State v. Allen*, 2023-Ohio-3655.]

IN THE COURT OF APPEALS OF OHIO
SECOND APPELLATE DISTRICT
CLARK COUNTY

| | | |
|---|---|---|
| STATE OF OHIO | : | |
| | : | |
| Appellee | : | C.A. No. 2023-CA-6 |
| | : | |
| v. | : | Trial Court Case Nos. 22-CR-0508; 22-CR-0680 |
| | : | |
| RYAN ALLEN | : | |
| | : | (Criminal Appeal from Common Pleas Court) |
| Appellant | : | |
| | : | |

. . . . . . . . . . .

O P I N I O N

Rendered on October 6, 2023

. . . . . . . . . . .

JOHNNA M. SHIA, Attorney for Appellant

ROBERT C. LOGSDON, Attorney for Appellee

. . . . . . . . . . . .

TUCKER, J.

{¶ 1} Ryan Allen appeals from his convictions on two fifth-degree felony charges of violating a protection order.

{¶ 2} The charges were brought in separate indictments alleging that Allen had violated the protection order by contacting his ex-wife's employer, the Clark County sheriff's office, through email.

{¶ 3} On appeal, Allen contends the trial court erred in joining the two indictments for a single jury trial. He also challenges the legal sufficiency and manifest weight of the evidence to sustain his convictions. He then argues that the trial court abused its discretion when imposing certain special conditions of community control. Finally, he alleges that he received ineffective assistance of counsel at trial.

{¶ 4} Upon review, we see no error in the trial court's joinder of the two indictments for trial. We conclude that Allen's convictions were not based on legally insufficient evidence and were not against the weight of the evidence. We do conclude, however, that some special conditions of community control imposed by the trial court were unreasonably overbroad. Finally, we see no ineffective assistance of Allen's trial counsel. Accordingly, the trial court's judgments will be affirmed in part and reversed in part. The cases will be remanded to the trial court for resentencing to re-impose narrowed special conditions of community control.

## I. Background

{¶ 5} The two protection-order violations at issue occurred in the context of child-custody proceedings involving Allen and his ex-wife, a deputy with the Clark County sheriff's office. In relevant part, the protection order prohibited appellant Allen from initiating or having any contact with his ex-wife or her employer. The order defined "contact" to include communication by telephone, text messaging, email, voice mail, and other forms of communication. The order prohibited Allen from engaging in such contact directly or through another person, even with his ex-wife's permission. Allen consented to the terms of the order and signed it.

**{¶ 6}** While the protection order was in effect, Allen sent a May 23, 2022 email to Clark County Chief Deputy Gary Cox. The email included a screen shot of what Allen claimed were text messages between his girlfriend and her own teen-aged son. The text messages purportedly involved a threatening exchange of words that had occurred at school involving Allen's girlfriend's son and Allen's ex-wife's son. The email to Chief Deputy Cox stated:

> Please find the attached communication between [appellant Allen's girlfriend and her minor son].
>
> In it it will indicate that [Ex-Wife's] son * * * can't seem to cease negatively interacting with [appellant Allen's girlfriend's son].
>
> It is highly suggested that you have a discussion with your deputy to formally advise her it is in her best interest to control her son. I will not advise [appellant Allen's girlfriend's son] to not defend himself in any future altercations, thus [Ex-Wife's] son will be at the peril of his actions and speech.

State's Trial Exhibit 2.

**{¶ 7}** As a result of the email, Major Andy Reynolds of the Clark County sheriff's office met privately with Allen's ex-wife. Major Reynolds advised her that a "complaint" had been filed against her, and he told her that she "needs to walk the line." At trial, Reynolds opined that the email had nothing to do with Allen's ex-wife's job performance as a deputy. Reynolds also testified that he never heard anything directly from Allen's girlfriend or her minor son about the issue.

**{¶ 8}** Less than three months later, Allen sent an August 15, 2022 email to Clark

County sheriff's office employee Ben Hunt regarding Allen's ex-wife's work schedule and other things. The email to Hunt stated:

> I am requesting the schedule of Deputy [Ex-Wife] as it has come to my attention she will be keeping our daughter this coming weekend.
>
> If in fact she works anytime during this coming weekend, she will be in contempt of our parenting Order; and as such I'm entitled to confirm whether she is scheduled or not to verify her claim.
>
> I would like to have her normal weekly schedule to confirm if any change has been made and not been communicated to me for future reference.
>
> Additionally, it has come to my attention that she has transported my daughter, twice the last week, to two separate babysitters with her department issued cruiser, as well as not using the legally required car seat.
>
> An employee misconduct complaint will be issued based upon this fact.

State's Trial Exhibit 3.

{¶ 9} After consulting Sergeant Denise Jones of the Clark County sheriff's office and speaking with a representative of the prosecutor's office, Hunt provided Allen with his ex-wife's work schedule pursuant to Ohio public-records law.

{¶ 10} On June 22, 2022, a grand jury indicted Allen in Clark C.P. No. 22CR508 on one count of violating a protection order for sending the first email to Chief Deputy Cox. On August 23, 2022, a grand jury indicted Allen in Clark C.P. No. 22CR680 on one count of violating a protection order for sending the second email to Clark County sheriff's

office employee Hunt. On the State's motion, the trial court consolidated the two cases for trial under Crim.R. 13.

{¶ 11} The case proceeded to a two-day jury trial in January 2023. The State presented testimony from Allen's ex-wife and from Clark County sheriff's office employees Cox, Reynolds, Hunt, and Jones.

{¶ 12} Detective Brian Melchi of the Clark County sheriff's office then testified as a defense witness. He primarily testified about an investigation in February 2022 concerning earlier allegations that Allen's ex-wife's son had threatened Allen's girlfriend's son. As part of that prior investigation, which had concluded before Allen's May 23, 2022 email to Chief Deputy Cox, Detective Melchi had left a voice mail for Allen's girlfriend inviting her to contact him with any additional information.

{¶ 13} The next defense witness was Chief Deputy Cox's predecessor, former Chief Deputy Jeffrey Meyer, who had retired from the sheriff's office the prior year. Meyer testified that during his tenure he had communicated with Allen by telephone and in person regarding complaints about Allen's ex-wife and for purposes of another public-records request. Meyer had been aware of the protection order on those occasions, but it made no difference to him with regard to his investigation of Allen's complaints. On cross-examination, Meyer added that Allen never made him aware that the terms of the protection order prohibited Allen from contacting his ex-wife's employer.

{¶ 14} The final defense witness was Allen. He admitted engaging in communications that violated the letter of the protection order. The essence of his argument was that both email messages were sent to address legitimate law-enforcement

and safety concerns. Allen testified that the purpose of the first email was to notify the sheriff's office about the possibility of violence involving his girlfriend's son and his ex-wife's son. He testified that the purpose of the second email was to prevent his ex-wife from possibly engaging in contempt by withholding his parenting time. He also testified that his ex-wife's transportation of their child in a cruiser without a car seat presented a legitimate safety concern.

{¶ 15} Based on the evidence presented, a jury found Allen guilty of both charges. The trial court imposed five years of community control with special conditions. Among other things, the special conditions obligated Allen to "[e]ngage in no contact, directly or indirectly," with his ex-wife, "[a]bstain from posting on social media," "[a]bstain from communicating with any media," and "[a]bstain from saying anything derogatory about the victim or Clark County Sheriff's Office[.]"

## II. Analysis

{¶ 16} Allen's first assignment of error states:

> The trial court erred when it granted the State's motion for joinder of indictments in a single jury trial because each indictment represented impermissible other acts evidence pursuant to Evid.R. 404(B).

{¶ 17} Allen raises two arguments under his first assignment of error. His primary argument is that the indictments should not have been joined for trial because the evidence supporting each protection-order violation constituted inadmissible Evid.R. 404(B) evidence as to the other violation. Allen reasons that joinder enabled the State to use evidence of the first protection-order violation to establish his propensity to violate

protection orders and to show that he acted in conformity with that propensity by committing the second protection-order violation, and vice versa. In a second argument, he asserts that the trial court erred in sustaining the State's motion for joinder without first giving him an opportunity to respond.

{¶ 18} Taking Allen's second argument first, we see no reversible error in the timing of the trial court's ruling on the State's motion for joinder. The State moved to join the two indictments for trial on October 18, 2022. The trial court filed an entry sustaining the motion three days later. Although the trial court ordered joinder without giving Allen time to respond, no motion from the State was even required. Under Crim.R. 13, a trial court may join charges sua sponte. *State v. Bell*, 8th Dist. Cuyahoga Nos. 107046, 107300, 2019-Ohio-787, ¶19, citing *State v. Hill*, 8th Dist. Cuyahoga No. 95379, 2011-Ohio-2523, ¶ 11, *State v. Moore*, 12th Dist. Madison No. CA92-12-034, 1994 WL 29881 (Jan. 31, 1994), and *State v. VanHorn*, 6th Dist. Lucas No. L-98-1171, 2000 WL 234557 (Mar. 3, 2000).

{¶ 19} The remedy if a defendant disputes the propriety of joinder is a Crim.R. 14 motion to sever charges. When severance is sought, the issue is whether joinder results in prejudice. *State v. Lott*, 51 Ohio St.3d 160, 163, 555 N.E.2d 293 (1990). "A defendant claiming error in the trial court's refusal to allow separate trials of multiple charges under Crim.R. 14 has the burden of affirmatively showing that his rights were prejudiced; he must furnish the trial court with sufficient information so that it can weigh the considerations favoring joinder against the defendant's right to a fair trial, and he must demonstrate that the court abused its discretion in refusing to separate the charges for

trial." *State v. Torres*, 66 Ohio St.2d 340, 421 N.E.2d 1288 (1981), syllabus.

{¶ 20} "When a defendant claims that he was prejudiced by the joinder of multiple offenses, a court must determine (1) whether evidence of the other crimes would be admissible even if the counts were severed, and (2) if not, whether the evidence of each crime is simple and distinct." *State v. Schaim*, 65 Ohio St.3d 51, 59, 600 N.E.2d 661 (1992), citing *State v. Hamblin*, 37 Ohio St.3d 153, 158-159, 524 N.E.2d 476 (1988). "Under the second method, the 'joinder' test, the state is not required to meet the stricter 'other acts' admissibility test, but is merely required to show that evidence of each crime joined at trial is simple and direct." *Lott* at 163, citing *State v. Roberts*, 62 Ohio St.2d 170, 175, 405 N.E.2d 247 (1980). "Thus, when simple and direct evidence exists, an accused is not prejudiced by joinder regardless of the nonadmissibility of evidence of these crimes as 'other acts' under Evid.R. 404(B)." *Id.* Evidence is "simple and direct" where (1) proof of each offense is "separate and distinct" or could be "readily separated"; (2) the jury is unlikely to be confused; and (3) "the evidence of each crime is uncomplicated." *State v. Coley*, 93 Ohio St.3d 253, 260, 754 N.E.2d 1129 (2001); *State v. LaMar*, 95 Ohio St.3d 181, 767 N.E.2d 166, ¶ 52 (2002); and *State v. Clinton*, 153 Ohio St.3d 422, 2017-Ohio-9423, 108 N.E.3d 1, ¶ 52.

{¶ 21} In the present case, it does not appear that Allen objected to joinder, and he did not seek severance under Crim.R. 14. Therefore, he has waived all but plain error. *State v. Kocevar*, 2023-Ohio-1513, 213 N.E.3d 1240, ¶ 15 (2d Dist.). But even if Allen had raised the issue below, we would find no error in the trial court's joinder of his two indictments. Allen argues at length that joinder was improper because evidence of both

protection-order violations would not be admissible if the two indictments had been tried separately.

**{¶ 22}** Assuming arguendo that Allen is correct, joinder nevertheless remained proper because the evidence of each crime was simple and direct. The State's evidence consisted of proof that a protection order prohibited Allen from contacting his ex-wife's employer and that he twice violated the order by contacting her employer via email. Allen admitted violating the letter of the protection order while essentially arguing that an implicit exception existed for contact made for legitimate law-enforcement-related reasons. Based on our review of the record, we easily conclude that the State's proof of each offense was separate and distinct, the jury was unlikely to be confused, and the evidence of each crime was uncomplicated. Thus, the trial court did not err in joining the two offenses for trial. The first assignment of error is overruled.

**{¶ 23}** Allen's second assignment of error states:

Allen's convictions are not supported by either the sufficiency of the evidence nor the manifest weight of the evidence.

**{¶ 24}** Under his second assignment of error, Allen challenges the constitutionality of the protection order insofar as it completely prohibited him from contacting the Clark County sheriff's office. He contends the order was an unlawful prior restraint on his First Amendment right to free speech. Although Allen argued below that he had contacted the sheriff's office for legitimate reasons and, therefore, did not violate the order, he acknowledges on appeal that the constitutionality of the protection order's restrictions was not raised or adjudicated at trial.

{¶ 25} Upon review, we find Allen's second assignment of error to be unpersuasive. "An appellate court's function when reviewing the sufficiency of the evidence to support a criminal conviction is to examine the evidence admitted at trial to determine whether such evidence, if believed, would convince the average mind of the defendant's guilt beyond a reasonable doubt. The relevant inquiry is whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt." *State v. Jenks*, 61 Ohio St.3d 259, 574 N.E.2d 492 (1991), paragraph two of the syllabus.

{¶ 26} Our analysis is different when reviewing a manifest-weight argument. When a conviction is challenged on appeal as being against the weight of the evidence, an appellate court must review the entire record, weigh the evidence and all reasonable inferences, consider witness credibility, and determine whether, in resolving conflicts in the evidence, the trier of fact "clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered." *State v. Thompkins*, 78 Ohio St.3d 380, 387, 678 N.E.2d 541 (1997). A judgment should be reversed as being against the manifest weight of the evidence "only in the exceptional case in which the evidence weighs heavily against the conviction." *State v. Martin*, 20 Ohio App.3d 172, 175, 485 N.E.2d 717 (1st Dist.1983).

{¶ 27} With the foregoing standards in mind, we reject Allen's legal-sufficiency and manifest-weight challenges. As an initial matter, we note that the protection order was entered in his divorce case as part of a consent agreement. *See* State's Trial Exhibit 1. Allen signed the order and explicitly agreed to the no-contact restrictions about which he

now complains. If he believed the terms of the protection order were overbroad or otherwise unconstitutional, he should not have agreed to them.

{¶ 28} A second problem with Allen's argument is that it makes an improper collateral attack on the validity of the protection order. "The general rule is that unless an order is void for lack of subject-matter or personal jurisdiction, it must be obeyed until it is set aside by proper proceedings. * * * Unless a judgment was issued without jurisdiction or was procured by fraud, it is considered valid, and even though it may be flawed in its resolution of the merits, its integrity is generally not subject to collateral attack in a separate judicial proceeding." (Citations omitted.) *Cincinnati Bar Assn. v. Hauck*, 148 Ohio St.3d 203, 2016-Ohio-7826, 69 N.E.3d 719, ¶ 28.

{¶ 29} In *Hauck*, the Ohio Supreme Court rejected an attorney's argument that he did not violate the Rules of Professional Conduct by assisting a client with violating a protection order that the attorney claimed was unconstitutional. The Ohio Supreme Court held that the attorney could not collaterally attack the constitutionality of the protection order in a disciplinary proceeding for assisting in its violation. *Id.* at ¶ 29; *see also State v. Phipps*, 2d Dist. Montgomery No. 29199, 2022-Ohio-1188, ¶ 11, fn. 1 (recognizing that a defendant cannot challenge the validity of a protection order in a criminal case involving his prosecution for violating it); *State v. Hall*, 2d Dist. Miami No. 2021-CA-37, 2022-Ohio-3455, ¶ 8 ("Hall admittedly had been served with and signed a court-issued protection order prohibiting him from engaging in certain conduct. The criminal charges accused him of violating the order. Hall's due-process argument constitutes an improper collateral attack on the protection order. He cannot challenge its validity in a criminal case involving

his prosecution for violating it.").

**{¶ 30}** Here Allen does not argue that the protection order was void for lack of subject-matter or personal jurisdiction. Instead, he seeks to challenge the order's constitutionality in a criminal case involving his prosecution for violating it. Based on the foregoing authority, we conclude that Allen's argument constitutes an impermissible collateral attack on the order. If Allen believed the order was unconstitutional, he should have challenged it in the divorce case.

**{¶ 31}** Finally, assuming purely arguendo that Allen can raise his constitutional argument now—despite agreeing to the terms of the protection order, not challenging its constitutionality in the divorce case, and not raising a constitutional argument below—we find no merit in his second assignment of error. Even if we accept the proposition that Allen retained a constitutional right to contact the sheriff's office for "legitimate" reasons despite the protection order, the record supported a finding that his two emails exceeded the scope of such a right.

**{¶ 32}** Allen's email to Chief Deputy Cox did not merely alert the sheriff's office to a potential fight between Allen's girlfriend's son and his ex-wife's son, which Allen claimed was a legitimate reason to contact law enforcement. As set forth above, the email also "highly suggested" to Chief Deputy Cox that he "have a discussion with your deputy to formally advise her it is in her best interest to control her son." As a result of the email, a supervisor met with Allen's ex-wife and cautioned her to "walk the line." In our view, the jury reasonably could have concluded that one purpose for Allen's first email was to harass or cause trouble for his ex-wife at work and that his communication violated the

protection order.

{¶ 33} Allen's email to sheriff's office employee Ben Hunt likewise did not simply make a public-records request. In addition to requesting his ex-wife's work schedule, which Allen claimed was a legitimate reason to contact her employer, the email speculated that she might be planning to engage in future contempt of court by withholding his parenting time. Allen also accused his ex-wife of transporting their child without a car seat. Again, the jury reasonably could have found that these aspects of Allen's communication primarily were intended to harass or cause trouble for his ex-wife at work and that they violated the protection order.

{¶ 34} Finally, we note that Allen's girlfriend personally could have informed the sheriff's office of potential violence between her own son and Allen's ex-wife's son. Allen's involvement was not required. Allen also could have gone to domestic-relations court to obtain his ex-wife's work schedule through his attorney and to express concerns about her potentially being in contempt with regard to parenting time. If fact, the record reflects that Allen subsequently did obtain one of his ex-wife's work schedules through a subpoena in the domestic-relations case.

{¶ 35} On appeal, Allen asserts that no one from the sheriff's office considered his emails to be a violation of the protection order, that his communications with the sheriff's office were welcomed, and that no one from the sheriff's office told him the communications were unpermitted. He also cites the definition of "domestic violence" in R.C. 3113.31(A)(1) and maintains that his two emails did not constitute acts of domestic violence.

{¶ 36} Even if the foregoing assertions are true, they are irrelevant. Employees of the sheriff's office were not obligated to be aware of the protection-order's prohibitions or to warn Allen against violating it. Moreover, Allen was not charged with domestic violence for sending the email messages. He was charged with violating the protection order for contacting his ex-wife's employer. At trial, Allen admitted being aware of the protection order and engaging in acts that he knew violated its terms. Even if we accept, arguendo, that the no-contact provision in the protection order implicitly exempted necessary and legitimate law-enforcement-related communications, the jury properly could have rejected Allen's argument that his email messages did not violate the order.

{¶ 37} Based on the record before us, a rational trier of fact reasonably could have found Allen guilty of violating the protection order by sending the two email messages. We also are unpersuaded that the trial court clearly lost its way and created a manifest miscarriage of justice. This was not an exceptional case in which the evidence weighed heavily against the convictions. Accordingly, the second assignment of error is overruled.

{¶ 38} Allen's third assignment of error states:

The trial court abused its discretion when it imposed certain special conditions of community control upon Allen that are overbroad, unreasonable, and unconstitutional.

{¶ 39} In his third assignment of error, Allen challenges the trial court's imposition of community-control conditions restricting his freedom of expression.[1] The challenged

---

[1] At oral argument, we were advised that the trial court revoked Allen's community control during the pendency of this appeal and that Allen has appealed from the revocation decision. Particularly in light of Allen's appeal from the recent revocation of his community control, we do not find his third assignment of error to be moot.

conditions in the trial court's judgment entry obligated him to "[e]ngage in no contact, directly or indirectly," with his ex-wife, "[a]bstain from posting on social media," "[a]bstain from communicating with any media," and "[a]bstain from saying anything derogatory about the victim or Clark County Sheriff's Office[.]"[2]

{¶ 40} At sentencing, the trial court stressed that the ban on Allen contacting his ex-wife included his use of a "My Family Wizard" app to communicate with her about his parenting time with their daughter. Addressing Allen, the trial court explained the following with regard to all of the challenged special conditions:

* * * You are walking on egg shells. You are on thin ice. If I even hear that you've remotely violated any of these conditions and it can be proven by the Prosecutor, you're going to go to prison for 24 months. I mean, it's just that simple. So the first condition, and with all due respect to any previous protection order, this condition is going to trump any of that. You're to have no contact with [your ex-wife], none, not even through the app. You're done.

Now, you might be saying, well, how am I going to get my daughter? And I certainly don't want to keep your daughter from you. That's not my intention. But you're going to figure that out. That's not my problem. It's not [your ex-wife's] problem. It's your problem because you've put yourself in

---

[2] These conditions were paraphrased and repeated in a form Allen signed for his probation officer. Allen's appellate brief cites the conditions contained in the form. Because a trial court speaks through its journal entries, we will use the language found in its judgment entry.

this position. You're not using that app anymore. So I don't know how you're * * * going to make arrangements to get your daughter. I really don't.

I want you to be able to see your daughter but you're going to have to figure out with [your attorney], whether [he] makes the arrangements or you figure something else out, but you're not even going to use the app. You're done with social media. You're not to be on social media at all. I don't care if you're just posting a picture of your daughter, you're done because I know what you'll do. You'll post things that are intended to harass [your ex-wife] and it will be veiled in some fashion but that's what you'll do so no social media.

And for that matter, no media at all. I know the Prosecutor had indicated that you had made some threat that you would go to the media about the sheriff's office or [your ex-wife] or, you're not to talk to the media at all about anything. I don't care if you rescue somebody out of a burning house and they want to ask you about it. You're not talking to the media because you'll find a way to indirectly harass [your ex-wife].

Now, this is something I've never done and there's certainly some free speech issues and enforceability issues but you are not to say anything negative or derogatory about [your ex-wife] to anyone. If it gets back to me that you're saying bad things about her out there in the community, that's a violation of your community control. You're not to do that.

Now, I understand you have legal proceedings pending. If you're in

court and it's under the direction of a Judge and rules of evidence and rules of procedure and attorneys are there and, you know, I don't want to hamper [your attorney] or you from making points that you think you need to make with respect to a shared parenting agreement or anything like that but, and if you have to confide in a close friend or family member, obviously the Court can't enforce those types of communications.

But what I'm talking about is anything that you think could potentially remotely get back to her or to the sheriff's office or to anybody else in the community, that's going to be a violation of your community control. * * * * * *

Oh, back to the saying anything derogatory about [your ex-wife]. You say that to your child and somehow it gets back to [your ex-wife], that's a violation of your community control. So to sum up my intention with this sentence is to get you to stop. Just leave her alone. Just move on. * * *

Disposition Transcript at 23-26.

{¶ 41} The trial court's strict conditions appear to have been motivated partially in response to representations by the prosecutor about uncharged inappropriate behavior Allen had engaged in regarding his ex-wife. According to the prosecutor, this behavior included his making multiple other complaints to the sheriff's office that resulted in his ex-wife's being investigated. It also included making threats to go public with allegations about his ex-wife and about the sheriff's office by contacting the news media. Allen also purportedly complained about his ex-wife and the sheriff's office to the superintendent of

the school district where his ex-wife had been assigned as a resource officer. Allen made threats to take various actions against the school district if it allowed his ex-wife to remain in her position. According to the prosecutor, Allen's numerous complaints were investigated, and his ex-wife was found to have committed no violations.

{¶ 42} Allen challenges the above-referenced special conditions on statutory and constitutional grounds. With respect to the statutory issue, R.C. 2929.15 grants a trial court broad discretion to impose any "appropriate" community-control condition. In *State v. Jones*, 49 Ohio St.3d 51, 550 N.E.2d 469 (1990), the Ohio Supreme Court provided a standard to determine whether a trial court had abused that discretion. The test is "whether the condition (1) is reasonably related to rehabilitating the offender, (2) has some relationship to the crime of which the offender was convicted, and (3) relates to conduct which is criminal or reasonably related to future criminality and serves the statutory ends of probation." *Id.* at 53. Even when a condition relates to these goals, however, it "cannot be overly broad so as to unnecessarily impinge upon the probationer's liberty." *Id.* at 52. "The requirement that a condition may not be overbroad is connected to the reasonableness of a condition." *State v. Talty*, 103 Ohio St.3d 177, 2004-Ohio-4888, 814 N.E.2d 1201, ¶ 14. The availability of "ready alternatives" is evidence that a condition is unreasonable. *Id.* In short, "*Jones* stands for the proposition that probation conditions must be reasonably related to the statutory ends of probation and must not be overbroad. Because community control is the functional equivalent of probation, this proposition applies with equal force to community-control sanctions." *Id.* at ¶ 16.

{¶ 43} In the broadest sense, the prohibitions at issue—Allen's contacting his ex-

wife about anything, posting anything on social media, communicating with the media for any reason, and saying anything derogatory about his ex-wife or the sheriff's office—at least arguably do bear some relationship to rehabilitating Allen as well as to the crimes at issue and to conduct that may be related to future criminality.

{¶ 44} Allen was convicted on two counts of violating a protection order by contacting his ex-wife's employer. The evidence at trial supported a finding that this contact was motivated at least in part by a desire to harass his ex-wife and cause problems for her at work. At sentencing, the State also advised the trial court about other uncharged incidents in which Allen purportedly contacted his ex-wife's employer and threatened to contact the media. Given the nature of Allen's offenses and the information before the trial court at sentencing, the challenged special conditions all bore an identifiable relationship to the goals of community control. The challenged conditions sought to cut off all potential avenues for Allen to harass his ex-wife or interfere with her career. Broadly speaking, then, the conditions are related to rehabilitating Allen, they bear some relationship to his crimes, and they are related to preventing future criminal behavior.

{¶ 45} We nevertheless are compelled to conclude that the conditions are overbroad and unreasonable as formulated. In our view, the conditions do unnecessarily impinge on Allen's liberty interests and freedom of expression. The absolute prohibition on Allen contacting his ex-wife is the most reasonable of the special conditions imposed. Indeed, the existing protection order already prohibited any such communication. The domestic-relations court apparently had carved out an exception to the extent that Allen

was allowed to communicate with his ex-wife through a "My Family Wizard" app for purposes of facilitating parenting time. We are unconvinced that banning this limited contact reasonably served the ends of community control. Allen's two charged offenses did not involve abuse of his right to use the app as previously authorized by the domestic-relations court. The other incidents referenced by the prosecutor also did not involve any abuse of the app or threats by Allen to misuse it. Absent any apparent justification on the record for precluding Allen from using the app, we find that this aspect of the trial court's special conditions unnecessarily made it more difficult for him to see his daughter and unreasonably interfered with his right to do so.

{¶ 46} If Allen misuses the My Family Wizard app in the future to harass his ex-wife, the trial court's prohibition may be warranted. On the record before us, however, we conclude that this aspect of the trial court's prohibition is unreasonably overbroad. This is not to say that the trial court currently cannot place any limitations on Allen's use of the app. Unfortunately the record on appeal does not include the domestic-relations court's order authorizing Allen's use of the app. On remand, the trial court retains discretion to restrict Allen's communication with his ex-wife through the app to specific types of communications regarding their child. The need for any additional restriction depends in part on the language and scope of the existing domestic-relations order directing Allen and his ex-wife to use the app. We leave it to the trial court on remand to determine whether Allen's right to use the My Family Wizard app should be narrowed and, if so, in what way.

{¶ 47} The prohibition on Allen posting anything on social media also strikes us as

overbroad under our case law. In *State v. McCaleb*, 2d Dist. Greene No. 2005-CA-155, 2006-Ohio-4652, the defendant was convicted of violating a protection order by making phone calls and sending text messages to the victim. As part of his community-control sanctions, the trial court prohibited him from referring to the victim or any other participants in the case on his website. This court upheld the condition insofar as it precluded the defendant from referring to the victim. We invalidated it, however, insofar as it prevented the defendant from referring to any other participants in the case, finding it "overly broad and unduly restrictive." *Id.* at ¶ 53.

{¶ 48} Here the trial court's total prohibition on Allen's posting anything on social media was significantly broader than the invalid restriction in *McCaleb*. In our view, the goals of community control readily may be served by imposing an alternative restriction prohibiting Allen from posting anything on social media related to his ex-wife or the sheriff's office's employment relationship with her.

{¶ 49} We reach the same conclusion regarding the trial court's prohibition on Allen's communicating with the media. This sweeping prohibition unnecessarily impinged on Allen's rights. The ends of community control readily may be served by an alternative restriction prohibiting him from communicating with the media for anything related to his ex-wife or the sheriff's office's employment relationship with her.

{¶ 50} We also find unreasonably overbroad the trial court's prohibition on Allen saying anything derogatory about his ex-wife or the sheriff's office. As modified herein, the previous restrictions already prohibit him from saying anything at all on social media or to the news media about his ex-wife or the sheriff's office's employment relationship

with her. In our view, the ends of community control readily may be served by an additional restriction prohibiting Allen from *publicly* saying anything derogatory about his ex-wife or her employer. Although the trial court's remarks at sentencing purported to exclude from its prohibition any negative statements Allen might make in private conversations, the actual condition it imposed contains no such exclusion.

{¶ 51} Finally, having found Allen's non-constitutional argument dispositive of the challenged special conditions of community control, we need not consider whether those conditions, as imposed by the trial court, also would be unconstitutional. *Talty,* 103 Ohio St.3d 177, 2004-Ohio-4888, 814 N.E.2d 1201, at ¶ 9 ("It is well settled that this court will not reach constitutional issues unless absolutely necessary."). As modified herein, we see no unconstitutionality in the challenged special conditions of community control, and nothing in Allen's appellate brief persuades us otherwise. *See State v. Chapman*, 163 Ohio St.3d 290, 2020-Ohio-6730, 170 N.E.3d 6 (applying a "reasonableness" test, rather than strict scrutiny, to evaluate a defendant's constitutional challenge to a community-control condition that impinged on a fundamental right).

{¶ 52} Based on the reasoning set forth above, the third assignment of error is sustained in part and overruled in part.

{¶ 53} Allen's final assignment of error states:

Allen received ineffective assistance of counsel.

{¶ 54} Under his fourth assignment of error, Allen asserts ineffective assistance of trial counsel based on his attorney's failure to challenge the constitutionality of the protection order's no-contact provision, failure to challenge or object to joinder of the two

indictments for trial, and failure to object to the special conditions of community control addressed above.

{¶ 55} We review alleged instances of ineffective assistance of trial counsel under the two-prong analysis set forth in *Strickland v. Washington*, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984), which was adopted by the Ohio Supreme Court in *State v. Bradley*, 42 Ohio St.3d 136, 538 N.E.2d 373 (1989). To prevail on an ineffective-assistance claim, a defendant must show that trial counsel rendered deficient performance and that counsel's deficient performance prejudiced him. *Strickland* at paragraph two of the syllabus; *Bradley* at paragraph two of the syllabus. The failure to make a showing of either deficient performance or prejudice defeats an ineffective-assistance claim. *Strickland* at 697.

{¶ 56} To establish deficient performance, a defendant must show that his trial counsel's performance fell below an objective standard of reasonable representation. *Id.* at 688. In evaluating counsel's performance, a reviewing court "must indulge in a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." *Id.* at 689. "The adequacy of counsel's performance must be viewed in light of all of the circumstances surrounding the trial court proceedings." *State v. Jackson*, 2d Dist. Champaign No. 2004-CA-24, 2005-Ohio-6143, ¶ 29. To establish prejudice, a defendant must show that there is "a reasonable probability that, but for counsel's errors, the proceeding's result would have been different." *State v. Hale*, 119 Ohio St.3d 118, 2008-Ohio-3426, 892 N.E.2d 864, ¶ 204, citing *Strickland* at 687-688 and *Bradley* at paragraph two of the syllabus.

{¶ 57} Here Allen's trial counsel did not provide ineffective assistance by failing to challenge the constitutionality of the protection order's no-contact provision. Allen agreed to the terms of the order in the divorce case, and any attempt to challenge its validity in his criminal case would have constituted an impermissible collateral attack. Moreover, as we explained above, the jury reasonably found that Allen had violated the protection order even if we read into it an implicit exception for legitimate law-enforcement-related contact. Under these circumstances, we see neither deficient representation by counsel nor prejudice to Allen.

{¶ 58} Allen's trial counsel also did not render ineffective assistance by failing to seek severance of the two indictments after the trial court joined them. Joinder was proper because the evidence of each crime was simple and direct. Therefore, defense counsel did not provide deficient representation by failing to seek severance, and Allen was not prejudiced by his attorney failing to raise the issue.

{¶ 59} We likewise see no ineffective assistance of counsel with regard to the special conditions of community control, which were imposed as part of Allen's sentence. We examined and narrowed those conditions in our analysis above. Therefore, Allen was not prejudiced by his trial counsel's failure to object to that portion of his sentence. The fourth assignment of error is overruled.

### III. Conclusion

{¶ 60} Having sustained Allen's third assignment of error in part, we reverse the trial court's judgments to the extent that they imposed the special conditions of community control discussed above. In all other respects, the trial court's judgments are affirmed.

The cases are remanded to the trial court for resentencing to re-impose the challenged special conditions of community control consistent with the guidance provided herein.

. . . . . . . . . . . . .

LEWIS, J. and HUFFMAN, J., concur.