[Cite as *State v. Dabbelt*, 2025-Ohio-1675.]

IN THE COURT OF APPEALS OF OHIO
SECOND APPELLATE DISTRICT
MONTGOMERY COUNTY

|  |  |  |
|---|---|---|
| STATE OF OHIO | : | |
| | : | |
| Appellee | : | C.A. No. 30285 |
| | : | |
| v. | : | Trial Court Case No. 23CRB01350 |
| | : | |
| ANDREW J. DABBELT | : | (Criminal Appeal from Municipal Court) |
| | : | |
| Appellant | : | |
| | : | |

. . . . . . . . . . .

O P I N I O N

Rendered on May 9, 2025

. . . . . . . . . . .

KIRSTEN KNIGHT, Attorney for Appellant

JOHN D. EVERETT, Attorney for Appellee

. . . . . . . . . . . .

TUCKER, J.

{¶ 1} Andrew J. Dabbelt appeals from his conviction following a bench trial on one count of violating a protection order, a first-degree misdemeanor.

{¶ 2} Dabbelt challenges the legal sufficiency of the State's evidence to sustain his conviction. Notwithstanding the language of the protection order, he also argues that one

of his alleged violations involved speech protected by the First Amendment.

{¶ 3} We conclude that the State presented legally sufficient evidence and that Dabbelt's constitutional argument is unavailing. Accordingly, the trial court's judgment will be affirmed.

## I. Background

{¶ 4} On October 5, 2023, N.D. obtained an ex parte civil stalking protection order against Dabbelt. The order was based on N.D.'s allegations that Dabbelt had been sending him threatening messages through Facebook. The order included the following no-contact provision:

> **RESPONDENT SHALL NOT INITIATE OR HAVE ANY CONTACT** with the protected persons named in this Order or their residences, businesses, places of employment, schools, day care centers, or child care providers. Contact includes, but is not limited to, landline, cordless, cellular or digital telephone; text; instant messaging; fax; e-mail; voicemail; delivery service; social media; blogging; writings; electronic communications; posting a message; or communications by any other means directly or through another person.

{¶ 5} Dabbelt was served with the protection order on the evening of October 5, 2023. Shortly after midnight, in the early morning hours of October 6, 2023, N.D. received a notification on his cell phone that Dabbelt had sent him a Facebook "friend request." N.D. did not accept the request. A short time later, N.D. saw a Facebook post Dabbelt had made referencing N.D., the protection order, and a phone call Dabbelt had received

from a police officer. N.D. then received a notification about Dabbelt leaving a negative employment-related review of him on Facebook. Finally, one of N.D.'s friends apparently sent or forwarded him two Facebook posts from Dabbelt. One of them referred to N.D. with profanities, and the other contained the substance of the negative review.

{¶ 6} Based on the foregoing communications, Dabbelt was charged with one count of violating a protection order. The case proceeded to a June 5, 2024 bench trial. The only witnesses were N.D., Dabbelt, and Centerville police officer Michael Fry, who responded to N.D.'s complaint regarding the Facebook communications. After N.D. testified about the above-referenced messages, Fry testified about his investigation into the matter. He had responded to N.D.'s residence, reviewed the Facebook postings, and spoken to Dabbelt twice on the telephone.

{¶ 7} For his part, Dabbelt denied sending the friend request to N.D. He claimed that other people had access to his Facebook account and suggested that one of them had sent it. As for his post referring to N.D., the protection order, and a phone call with Fry, Dabbelt admitted making that post on his own Facebook page. However, he denied "tagging" N.D. in it, claiming instead that he only "mentioned" N.D. Given that he and N.D. were not Facebook "friends," Dabbelt opined that N.D. would not have received a notification about the post. Finally, Dabbelt admitted leaving a negative review of N.D.

{¶ 8} Following the presentation of evidence, Dabbelt moved for a judgment of acquittal under Crim.R. 29. Citing *Bey v. Rasawehr*, 2020-Ohio-3301, he argued that he had a First Amendment right to leave the review and to make comments about N.D. on Facebook. The trial court overruled the motion and found Dabbelt guilty. It reasoned that

*Bey* involved regulating the content of a defendant's speech on the internet, whereas the protection order against Dabbelt did not address the content of his communications. Instead, it prohibited contact with N.D. The trial court then found that Dabbelt "possessed a firm working knowledge of the Facebook platform" and knew "that his activities on Facebook on 6 October 2023 would immediately trigger direct notifications to [N.D.'s] Facebook accounts." Therefore, the trial court held that Dabbelt recklessly had violated the terms of the protection order. It imposed a 180-day jail sentence with 179 days suspended and credit for one day served. It also imposed a partially suspended fine and placed Dabbelt on two years of unsupervised probation.

## II. Analysis

{¶ 9} On appeal, Dabbelt advances the following two assignments of error, which he briefs and argues together:

1. THE TRIAL COURT'S FINDING OF GUILT WAS NOT SUPPORTED BY SUFFICIENT, CREDIBLE EVIDENCE.

2. APPELLANT'S REVIEW ON SOCIAL MEDIA IS PROTECTED BY THE FIRST AMENDMENT AND WAS NOT A VIOLATION OF THE PROTECTION ORDER.

{¶ 10} Dabbelt challenges the legal sufficiency of the State's evidence to sustain his conviction. He contends the State failed to prove that he sent the friend request to N.D. He also claims his post referencing N.D., the protection order, and a phone call with officer Fry was made on his own Facebook page. Although the post mentioned N.D., Dabbelt insists that he did not "tag" N.D. or notify him of the post. Finally, he argues that

the review he left was on N.D.'s employer's Facebook page and that it was free speech protected by the First Amendment.

{¶ 11} "An appellate court's function when reviewing the sufficiency of the evidence to support a criminal conviction is to examine the evidence admitted at trial to determine whether such evidence, if believed, would convince the average mind of the defendant's guilt beyond a reasonable doubt. The relevant inquiry is whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt." *State v. Jenks*, 61 Ohio St.3d 259 (1991), paragraph two of the syllabus.

{¶ 12} With the foregoing standards in mind, we reject Dabbelt's challenge to the legal sufficiency of the State's evidence. He was convicted of violating R.C. 2919.27(A)(2), which provides that no person shall recklessly violate the terms of a protection order. "A person acts recklessly when, with heedless indifference to the consequences, the person disregards a substantial and unjustifiable risk that the person's conduct is likely to cause a certain result or is likely to be of a certain nature." R.C. 2901.22(C).

{¶ 13} Here the State presented evidence of five Facebook posts or messages. The first was a friend request sent from Dabbelt's account to N.D.'s account. *See* State's Trial Exhibits C and G.  N.D. received a notification about the friend request, which Dabbelt denied sending. In its written decision, the trial court noted Dabbelt's denial without making a factual finding as to whether he sent the request.

{¶ 14} The second post was made by Dabbelt on his own Facebook page. *See*

State's Trial Exhibit E. It included a screen shot of the protection order, mentioned Dabbelt's phone conversation with officer Fry, and referenced N.D. by name, saying "Good luck [N.D.] about lying." N.D.'s name appeared in a hyperlink in the Facebook post. At trial, a dispute arose concerning whether Dabbelt's post merely "mentioned" N.D. or whether it "tagged" him. Dabbelt insisted that he only mentioned N.D. He also opined that mentioning N.D. in the post would not have resulted in N.D.'s receiving a notification about it because they were not "Facebook friends." For his part, N.D. testified that he was tagged and that he did receive a notification, but he produced no screen shot or other supporting evidence to substantiate his claim. In its written decision, the trial court did not specifically address whether Dabbelt had "tagged" N.D. in this Facebook post or whether N.D. had received a notification about it. As noted above, however, the trial court did find, more generally, that Dabbelt "was aware that his activities on Facebook on 6 October 2023 would immediately trigger direct notifications" to N.D.

{¶ 15} The third and fourth posts appear to have been sent or forwarded to N.D. by one of his own friends. *See* State's Trial Exhibits D and F. One of the posts consisted of Dabbelt calling N.D. names on Dabbelt's own Facebook page. The other post contained the substance of Dabbelt's negative review of N.D.

{¶ 16} The final message was a notification that N.D. received in his Facebook account. *See* State's Trial Exhibit H. In reference to Dabbelt's negative review, the notification advised N.D. that Dabbelt "doesn't recommend" him. At trial, N.D. and Dabbelt disputed whether the Facebook page where Dabbelt left the review was N.D.'s own professional work-related Facebook page or whether the page belonged to N.D.'s

employer. In its written decision, the trial court did not resolve this issue.

{¶ 17} Upon review, we conclude that the State's evidence of the foregoing Facebook posts or messages was legally sufficient to sustain Dabbelt's conviction for violating the protection order. For present purposes, we will assume, arguendo, that Dabbelt did not send the friend request. Given his denial and the trial court's failure to make a factual finding on the issue, we decline to affirm his conviction based on the friend request despite our reservations about the credibility of his testimony. Dabbelt's conviction also was not supported by the two messages that apparently were forwarded to N.D. by a friend. Nothing suggests that N.D.'s friend sent the messages on Dabbelt's behalf or that Dabbelt even knew the posts had been forwarded to N.D.

{¶ 18} We also will assume, arguendo, that Dabbelt did not "tag" N.D. in the post that included a screen shot of the protection order, mentioned Dabbelt's phone conversation with officer Fry, and referenced N.D. by name. In its written decision, the trial court made no finding as to whether N.D. had been "tagged" or merely "mentioned." Although Dabbelt admitted mentioning N.D. in the post, he claimed that a mention would not have generated a notification to N.D. because they were not Facebook friends. N.D. testified, however, that he did receive a notification about the post. Significantly, the trial court also found that Dabbelt knew his Facebook posts would trigger notifications to N.D. Given this finding by the trial court, we conclude that Dabbelt's Facebook post mentioning N.D. and including N.D.'s name as a hyperlink violated the protection order. Among other things, the order prohibited Dabbelt from initiating any contact with N.D. by posting a message on social media. Despite that prohibition, Dabbelt posted a Facebook message

about N.D. with knowledge that Facebook would notify N.D. of the message. In so doing, Dabbelt initiated contact with N.D. through social media in violation of the order.

{¶ 19} Finally, Dabbelt also violated the protection order by leaving a negative review on Facebook. As noted above, the order prohibited him from initiating or having any contact with N.D. or N.D.'s employer. Despite this prohibition, Dabbelt admitted posting a negative review of N.D. on Facebook, and Facebook notified N.D. of the review. Dabbelt plainly made the derogatory post to harm N.D. professionally, despite never having been a client of N.D. The review accused N.D. of caring about his job more than his child. It also accused N.D. of threatening "his baby's momma" and referred to him as a "total pos." Even if we accept Dabbelt's assertion that he left the review on N.D.'s employer's Facebook page, rather than on N.D.'s own professional page, the post still violated the no-contact provision. Indeed, by discussing N.D. on N.D.'s employer's Facebook page, Dabbelt initiated contact with N.D.'s employer.

{¶ 20} In defense of the negative review, Dabbelt makes a free-speech argument. Although the protection order prohibited contact with N.D.'s employer, Dabbelt cites *Bey v. Rasawehr*, 2020-Ohio-3301, and argues that his review was protected by the First Amendment and that it did not violate the protection order. In *Bey*, the Ohio Supreme Court held that content-based restrictions on speech in a protection order violated the First Amendment. As a result, the Ohio Supreme Court vacated a portion of the order that enjoined future social media postings about the appellees or their alleged culpability in the deaths of their husbands.

{¶ 21} The trial court found *Bey* distinguishable insofar as it involved a content-

based restriction on speech. Unlike *Bey*, the trial court reasoned that the order in Dabbelt's case prohibited contact and was not a content-based restriction on speech. Upon review, we find *Bey* distinguishable and unhelpful to Dabbelt for a more fundamental reason. Notably, *Bey* was not a criminal case. It involved respondent Rasawehr's appeal from the issuance of a civil stalking protection order. Therefore, the constitutionality of the protection order's prohibitions was directly at issue.

{¶ 22} Unlike *Bey*, Dabbelt has appealed from his criminal conviction for violating a protection order, not from the issuance of the order. "The general rule is that unless [a protection] order is void for lack of subject-matter or personal jurisdiction, it must be obeyed until it is set aside by proper proceedings. . . . Unless a judgment was issued without jurisdiction or was procured by fraud, it is considered valid, and even though it may be flawed in its resolution of the merits, its integrity is generally not subject to collateral attack in a separate judicial proceeding." (Citations omitted.) *Cincinnati Bar Assn. v. Hauck*, 2016-Ohio-7826, ¶ 28.

{¶ 23} In *Hauck*, the Ohio Supreme Court rejected an attorney's argument that he did not violate the Rules of Professional Conduct by assisting a client with violating a protection order that the attorney claimed was unconstitutional. The Ohio Supreme Court held that the attorney could not collaterally attack the constitutionality of the protection order in a disciplinary proceeding for assisting in its violation. *Id.* at ¶ 29; *see also State v. Allen*, 2023-Ohio-3655, ¶ 30 (2d Dist.) ("Here Allen does not argue that the protection order was void for lack of subject-matter or personal jurisdiction. Instead, he seeks to challenge the order's constitutionality in a criminal case involving his prosecution for

violating it. . . . [W]e conclude that Allen's argument constitutes an impermissible collateral attack on the order."); *State v. Phipps*, 2022-Ohio-1188, ¶ 11, fn. 1 (2d Dist.) (recognizing that a defendant cannot challenge the validity of a protection order in a criminal case involving his prosecution for violating it); *State v. Hall*, 2022-Ohio-3455, ¶ 8 (2d Dist.) ("Hall admittedly had been served with and signed a court-issued protection order prohibiting him from engaging in certain conduct. The criminal charges accused him of violating the order. Hall's due-process argument constitutes an improper collateral attack on the protection order. He cannot challenge its validity in a criminal case involving his prosecution for violating it.").

{¶ 24} As in the foregoing cases, Dabbelt cannot collaterally attack N.D.'s protection order in his criminal case. Even if the order is constitutionally infirm, he is required to obey it "until it is set aside by proper proceedings." *Hauck* at ¶ 28. Consequently, we reject Dabbelt's argument that his Facebook review was protected by the First Amendment notwithstanding the protection order's clear no-contact provision.

### III. Conclusion

{¶ 25} For the reasons set forth above, we overrule Dabbelt's two assignments of error and affirm the judgment of the Kettering Municipal Court.

. . . . . . . . . . . . .

EPLEY, P.J. and LEWIS, J., concur.